944 So.2d 203 (2006)
Terry P. SANDERS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC05-2115.
Supreme Court of Florida.
October 26, 2006.
*204 James Marion Moorman, Public Defender and Kimberly Nolan Hopkins, Special Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Robert J. Krauss, Bureau Chief, Tampa Criminal Appeals and C. Suzanne Bechard, Assistant Attorney General, Tampa, FL, for Respondent.
BELL, J.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
IN ORDER FOR AN OFFENSE TO BE A LESSER-INCLUDED OFFENSE, MUST IT NECESSARILY RESULT IN A LESSER PENALTY THAN EITHER THE PENALTY FOR THE MAIN OFFENSE OR THE NEXT GREATER OFFENSE ON THE VERDICT FORM?
Sanders v. State, 912 So.2d 1286, 1291 (Fla. 2d DCA 2005). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. As explained below, we answer the certified question in the negative.

FACTS
The facts of this case as stated by the Second District Court of Appeal include:
Mr. Sanders shot a bouncer at Club Turbulence in Ybor City on May 16, 2002. Fortunately, the bullet passed through the bouncer's leg without causing a fatal injury. The State charged Mr. Sanders with attempted first-degree murder. Because the State maintained that he discharged a firearm and inflicted great bodily harm, it sought to reclassify the felony and impose an enhanced penalty under section 775.087, Florida Statutes (2002), which is commonly referred to as the 10-20-life statute. In light of his prior record, the State also noticed Mr. Sanders of the possibility that he could receive a sentence as a habitual offender.
At the trial, the court had difficulty determining the appropriate list of lesser included offenses. The attorneys and the judge collectively decided that aggravated battery was a lesser [included] offense of the main offense because the information alleged the discharge of a firearm resulting in great bodily harm, but they ultimately concluded that an instruction on this lesser [included] offense would give the State "two bites at the apple," because it resulted in the same penalty as another lesser [included] offense, attempted second-degree murder while discharging a firearm and inflicting great bodily harm. Accordingly, the trial court did not instruct on any variety of aggravated battery and instead instructed the jury on attempted second-degree murder and attempted voluntary manslaughter as the appropriate *205 lesser [included] offenses. . . . Mr. Sanders did not object to these instructions or to the verdict form.
Id. at 1287-88. The eleven options of the verdict form included four variations of the charged offense of attempted first-degree murder (in descending degree depending on whether the offense was reclassified for use of a firearm), four variations of the lesser included offense of attempted second-degree murder (in descending degree depending on whether the offense was reclassified for use of a firearm), two variations of the lesser included offense of voluntary manslaughter (in descending degree depending on whether the offense was reclassified for use of a firearm), and not guilty. See id. at 1291-92. Ultimately, "[t]he jury found Mr. Sanders guilty of the lesser included offense of attempted second-degree murder with a firearm and specifically decided that Mr. Sanders discharged the firearm and inflicted great bodily harm. This was option E on the verdict form." Id. at 1288. The trial court imposed a sentence of life imprisonment. Id.
On appeal, Sanders alleged that he was entitled to a new trial, arguing that the lesser included offense of which the jury found him guilty was not a true lesser included offense because the penalty imposed was not less than the penalty for the main offense charged. Id. The maximum sentence for the core offense of attempted first-degree murder is thirty years, while the sentence for attempted second-degree murder without any enhancements is fifteen years. However, with the application of the ten-twenty-life statute, the resulting maximum sentence for both attempted first- and second-degree murder while discharging a firearm and inflicting great bodily harm is the same  life.
The Second District affirmed Sanders' conviction and life sentence for the lesser included offense of attempted second-degree murder while discharging a firearm and inflicting great bodily harm. The district court noted:
The offenses listed on Mr. Sanders' verdict form began with life felonies and ended with a third-degree felony. The offenses were not listed in an order that guaranteed that the trial court must impose a lesser penalty, but if one considers all the various sentencing schemes, they are listed in an order that does give the trial court discretion to impose a sentence that is less severe than the preceding option on the verdict form.
Id. at 1289. Relying on this Court's decision in Ray v. State, 403 So.2d 956 (Fla. 1981), the district court held that "an offense is lesser in `penalty' not only when the conviction for the lesser [included] offense is guaranteed to result in a lesser penalty, but also when it will give the trial judge discretion to impose a lesser penalty than the offenses listed higher on the verdict form." Sanders, 912 So.2d at 1290. However, in so holding, the district court expressed uncertainty about how this Court intends trial courts to analyze reclassifications and enhancements when preparing verdict forms. Because of the complexity of the sentencing options caused by reclassification and enhancement statutes, the Second District stated that it was "not inclined to force trial courts to devise verdict forms that always guarantee that the defendant will receive a lesser penalty for each successive option on the verdict form." Id. at 1291.
We granted review based on the Second District's certified question. Again, the certified question asks, "In order for an offense to be a lesser-included offense, must it necessarily result in a lesser penalty than either the penalty for the main *206 offense or the next greater offense on the verdict form?"
We now explain our answer.

ANALYSIS
Sanders contends that a trial court may not list a necessary or permissible lesser included offense on the verdict form if, due to section 775.087, Florida Statutes (2002), the ten-twenty-life reclassification statute and its enhanced penalties, the potential sentence for the lesser included offense becomes equal to the potential sentence for the charged offense subject to the same reclassification statute and enhanced penalties. His argument arises from our opinion in Ray, 403 So.2d 956.[1]
In affirming the Second District's decision to uphold Sanders' conviction and sentence, we first define lesser included offenses. Next, we distinguish Sanders' case from our previous decision in Ray. Finally, we clarify how lesser included offenses relate to reclassifications and enhancements for purposes of fashioning a verdict form.
We begin by defining lesser included offenses. Lesser included offenses fall into two categories: necessary and permissive. Necessarily lesser included offenses are those offenses in which the statutory elements of the lesser included offense are always subsumed within those of the charged offense. State v. Paul, 934 So.2d 1167, 1176 (Fla.2006). A permissive lesser included offense exists when "the two offenses appear to be separate [on the face of the statutes], but the facts alleged in the accusatory pleadings are such that the lesser [included] offense cannot help but be perpetrated once the greater offense has been." State v. Weller, 590 So.2d 923, 925 n. 2 (Fla.1991).
Now, we clarify and distinguish Ray. As the Second District recognized, Ray does not hold that a lesser included offense must be lesser in both degree and penalty than the charged offense. The issue in Ray was that the offense of which Ray was convicted did not meet the definition of a lesser included offense because its statutory elements were not subsumed by the statutory elements of the greater offense and it was not subsumed by the greater offense as pled. In that situation, this Court held that
it is not fundamental error to convict a defendant under an erroneous lesser included charge when he had an opportunity to object to the charge and failed to do so if: 1) the improperly charged offense is lesser in degree and penalty than the main offense or 2) defense counsel requested the improper charge or relied on that charge as evidenced by argument to the jury or other affirmative action.
403 So.2d at 961 (footnote omitted). In contrast, the offense of which Sanders was convicted does meet the definition of a lesser included offense, making it unnecessary to apply the test enunciated in Ray. Thus, as the Second District stated, Ray does not "limit lesser [included] offenses only to those guaranteed to result in a lesser penalty." Sanders, 912 So.2d at 1290-91.
While Sanders takes issue with the fact that he received the same sentence for a lesser included offense with the applied enhancements as he would have for the charged offense subject to the same enhancements, this result does not constitute fundamental error. The jury in Sanders' trial found him guilty of attempted second-degree murder and also made the requisite *207 factual findings beyond a reasonable doubt for application of the firearm reclassification and sentence enhancement statute. Furthermore, as stated above, Ray does not require that the lesser included offense be lesser both in degree and in penalty. Because the lesser included offense here meets the definition of a lesser included offense, we find that it comports with our existing jurisprudence, especially since the trial judge here had the discretion to impose a lesser penalty. Therefore, Sanders' conviction of the proper lesser included offense is not fundamental error.
Finally, we clarify how lesser included offenses relate to reclassification and enhancement statutes when fashioning a verdict form. While reclassification and enhancement statutes have made it difficult for trial courts to prepare appropriate verdict forms, the basic premise of what constitutes a proper lesser included offense has not changed. Trial courts should continue to rely primarily and ultimately upon the applicable statutory provisions for the charged crime when they are determining lesser included offenses. However, the Florida Standard Jury Instructions in Criminal Cases contain a schedule that assists in this task. The charged crime should be followed on the verdict form by the determined lesser included offenses in descending order by degree of offense. After the court has examined the requisite statute and the relevant criminal jury instructions for the charged crime, the court should consider any reclassification or enhancement statute brought into play by the charging document and evidence at trial. Any factor required to be found by the jury for reclassification or enhancement purposes may then be placed in a separate interrogatory at the appropriate place.[2]

Conclusion
We answer the certified question in the negative and approve the Second District's decision below to the extent it is consistent with the analysis herein.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
PARIENTE, J., concurs with an opinion, in which ANSTEAD and CANTERO, JJ., concur.
PARIENTE, J., concurring.
I write separately to underscore two points in the majority opinion. First, trial courts should rely solely on the core or substantive offense in determining the order of lesser included offenses on a verdict form. Second, trial courts should provide an interrogatory separate from the verdict form for the core or substantive offenses for the jury to determine the existence of circumstances that can result in mandatory minimum sentences, sentence enhancements, or offense reclassifications.[3] Interrogatories *208 have been used successfully for many years under previous versions of section 775.087, Florida Statutes, which now includes the "10-20-life" mandatory penalties. We have noted that a "specific question or special verdict form is the clearest way by which the jury can make the finding necessary to support [a firearm] enhancement." State v. Hargrove, 694 So.2d 729, 731 (Fla.1997). Further, these interrogatories setting forth specific jury findings have increased importance under the Sixth Amendment to support a sentence that exceeds the maximum sentence authorized by the jury verdict on the substantive offense alone. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); see also Blakely v. Washington, 542 U.S. 296, 303-04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ("[T]he relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.").
A jury interrogatory on sentence-aggravating facts facilitates jury decision-making by turning the determination of guilt and finding of additional circumstances into distinct, sequential tasks. The distinction prevents juries from mistakenly assuming that descending verdict choices correspond to descending sentence severity, which Sanders argues as grounds for invalidating the verdict in this case. Finally, separate findings on the substantive offense and sentence-aggravating circumstances would also ameliorate the difficulty, faced by the trial court in this case, of determining the appropriate list of lesser included offenses. See Sanders v. State, 912 So.2d 1286, 1291 (Fla. 2d DCA 2005).
In his majority opinion below, Judge Altenbernd stated that "it is not entirely clear to this court that the supreme court intends trial courts to analyze reclassifications and enhancements in the same manner as lesser offenses when preparing verdict forms." Id. at 1290. Today's decision should resolve the uncertainty. Substantive or core offenses and the facts supporting reclassifications, enhancements, and mandatory minimum sentences for these offenses are distinct. Trial courts instructing juries on lesser included offenses should give instructions and provide verdict forms that comport with this distinction.
ANSTEAD and CANTERO, JJ., concur.
NOTES
[1] Sanders actually relied on the Fourth District Court of Appeal's interpretation of Ray in Franklin v. State, 877 So.2d 19 (Fla. 4th DCA 2004).
[2] As we addressed in our recent opinion in State v. Iseley, No. SC04-485, 944 So.2d 227, 231, 2006 WL 3025649 (Fla. Oct. 26, 2006), all that is required for the application of a reclassification or enhancement statute to an offense is a clear jury finding of the facts necessary to the reclassification or enhancement "either by (1) a specific question or special verdict form (which is the better practice), or (2) the inclusion of a reference to a firearm in identifying the specific crime for which the defendant is found guilty."
[3] In addition to offenses subject to reclassifications or enhancements via separate statutes such as section 775.087 (firearm reclassification and mandatory minimum term) or 784.07(2), Florida Statutes (2005) (law enforcement victim), interrogatories should be used for crimes such as burglary and robbery, in which the aggravating factor is part of the statute governing the substantive crime. See § 810.02, 812.13, Fla. Stat. (2005).