PER CURIAM.
 

 Freddie Lee Haliburton appeals the trial court’s summary denial of his Florida Rule of Criminal Procedure 3.800(a) and 3.850 motions. The motions raised variants of the same claim, and the trial court denied them in a single order ruling that the claim was impermissibly successive. We affirm. The claim is barred by the law of the case
 
 *603
 
 and collateral estoppel doctrines and no manifest injustice results.
 
 See State v. McBride,
 
 848 So.2d 287, 291-92 (Fla.2003).
 

 The issue Haliburton raises was preserved and argued on direct appeal and was rejected on the merits.
 
 Haliburton v. State,
 
 861 So.2d 1165 (Fla. 4th DCA 2003). Haliburton then raised this same claim in a Rule 3.800(a) motion to correct illegal sentence which was denied on the merits and affirmed.
 
 Haliburton v. State,
 
 919 So.2d 457 (Fla. 4th DCA 2006). He raised the same and similar variants of the same claim again in a motion for postconviction relief. That motion was also denied and affirmed on the merits.
 
 Haliburton v. State,
 
 939 So.2d 110 (Fla. 4th DCA 2006). The instant motions again raised variants of the same issue that has been repeatedly denied and rejected on appeal.
 

 The Offense
 

 Authorities received a 911 call which reported that a man was outside beating a woman with a gun and threatening to kill her. Police arrived and observed Halibur-ton in the street standing over the victim. He was covered in blood and holding a chrome handgun. Haliburton fled but was apprehended after a short foot chase. Police recovered the chrome handgun which they saw Haliburton throw into the bushes as he was fleeing.
 

 Haliburton was the victim’s ex-boyfriend and, in the presence of several witnesses, abducted her from the front yard of the home of her current boyfriend’s aunt. He placed her in a headlock and then forced her into his van. The victim yelled, “It’s Freddie, call the police!” The victim’s boyfriend attempted to stop Haliburton but was unable to do so. According to the victim’s statements to police, once inside the van, Haliburton held her at gun point with a handgun he retrieved from inside the van. Haliburton struck the victim with the gun several times as he drove her to his residence and told her that he was going to kill her and commit suicide. He attempted to force her inside his home and began beating her with the handgun and pointed it at her, threatening to shoot her, after she resisted. Police arrived while Haliburton was still beating the victim.
 

 After Haliburton was arrested, he made several incriminating statements while at the police station such as: “I told her to quit fucking with me”; “I should have shot her;” and “in six months, eight months, whenever this comes to trial, the only thing I’ll be facing is the firearm charge because the rest of this is going away.” Staples were required to close the 4-inch long laceration to the victim’s head. Photographs of the victim’s injuries were introduced at trial.
 

 The Claim
 

 Haliburton was convicted after a jury trial in 2002 of several offenses related to this incident, but the instant claim relates solely to his aggravated battery conviction. The information in this case charged Hali-burton with aggravated battery based on alternative theories that Haliburton used a deadly weapon (i.e. the firearm) or that he intentionally caused great bodily harm to the victim. § 784.045(l)(a), Fla. Stat. (2001). At trial, the judge instructed the jury, over defense objection, that aggravated battery based on the great bodily harm theory was a lesser-included offense of aggravated battery
 
 with a firearm.
 
 The judge agreed with the State that the applicability of the 10-20-LIFE statute made the aggravated battery with a firearm offense a “greater” offense because the jury’s finding that Haliburton possessed a firearm would call for a ten-year mandatory minimum penalty. § 775.087(2), Fla. Stat. (2001).
 

 On direct appeal, Haliburton argued that the trial court erred in instructing the
 
 *604
 
 jury in the above-described manner over his objection. He argued that, because the offenses were the same degree and carried the same maximum penalty, the jury may have been misled into believing it was convicting of a crime with a lesser penalty. We affirmed. Haliburton then raised similar claims in his initial Rule 3.800(a) and Rule 3.850 motions.
 

 In the instant successive motions, Haliburton notes that, as a prison releasee reoffender (PRR), a conviction for a second degree felony was subject to a 15-year mandatory minimum sentence.
 
 See
 
 § 775.082(9)(a)3c, Fla. Stat. (2001). Haliburton argues that because aggravated battery carries the same 15-year PRR mandatory minimum penalty, regardless of whether a firearm is used or not, the judge did not have discretion to impose a lesser punishment. He contends that he was deprived a fair opportunity to have the jury exercise its “pardon power” and that the jury may have been misled into believing that it was convicting Haliburton of an offense that carried a lesser penalty when in fact the lesser offense called for the same punishment.
 

 Subsequent Refinements in Law
 

 At the time we affirmed on direct appeal, and affirmed the denial of his prior motions, the Florida Supreme Court had yet to decide
 
 Sanders v. State,
 
 944 So.2d 203 (Fla.2006). In that case, the Florida Supreme Court recognized that a lesser-included offense need not “be lesser both in degree and in penalty” in order to be listed as a lesser offense.
 
 Id.
 
 at 207. Nevertheless, the Court clarified that lesser offenses should be determined based “primarily and ultimately upon the applicable statutory provisions for the charged crime” and in descending order based on the degree of the offense without regard to reclassification or enhancement statutes.
 
 Id.
 
 Any facts that need to be determined by a jury for an enhancement or reclassification to apply should be alleged in a separate interrogatory on the verdict form.
 
 Id.
 

 In this case, the trial court attempted to account for the firearm enhancement by instructing the jury that aggravated battery
 
 with a firearm
 
 was a greater offense. After
 
 Sanders,
 
 it is now apparent that “[l]esser included offenses are determined based on the elements of the offenses, not on the penalties attached.”
 
 Carle v. State,
 
 983 So.2d 693, 695 (Fla. 1st DCA 2008). Under the
 
 Sanders
 
 procedure, the jury should have determined whether Haliburton committed the offense of aggravated battery by using a deadly weapon, by intentionally causing great bodily harm, or both. The state had alleged both theories in the information, and the jury was properly instructed that the state could prove aggravated battery under these alternative theories. The jury could have decided whether Haliburton possessed a firearm during the aggravated battery offense in a special interrogatory. Before
 
 Sanders,
 
 however, the law regarding how lesser included offenses should be listed on a verdict form was less clear.
 
 [1]
 

 No court has held that the ruling in
 
 Sanders
 
 applies retroactively to cases that
 
 *605
 
 were final when
 
 Sanders
 
 was decided. We do not believe that the evolutionary refinement announced in
 
 Sanders,
 
 regarding how to order offenses on a verdict form, applies retroactively to disturb the finality of Haliburton’s conviction.
 
 See State v. Barnum,
 
 921 So.2d 513 (Fla.2005)
 

 The Motions are Procedurally Barred
 

 Haliburton’s untimely claim is barred by the law of the case and collateral estoppel doctrines and application of a procedural bar does not result in a manifest injustice.
 
 McBride,
 
 848 So.2d at 291-92. The jury in this case was permitted to exercise its pardon power but refused to convict Haliburton of simple battery which was listed as the next lesser-included offense on the verdict form. The jury determined that the state proved beyond a reasonable doubt that Haliburton committed an aggravated battery by intentionally causing the victim great bodily harm.
 

 Although it now seems more clear, after the refinement of
 
 Sanders,
 
 that the great bodily harm theory should not have been listed as a “lesser” included offense, any error in this case is not a fundamental error that can be raised
 
 at any time. Cf. Ray v. State,
 
 403 So.2d 956 (Fla.1981) (setting out the test for determining whether an instruction on a permissive lesser-included offense that is improperly submitted to the jury without objection can be raised as a “fundamental error” on direct appeal).
 
 See also Bedford v. State,
 
 970 So.2d 935 (Fla. 4th DCA 2008) (finding that neither a fundamental error nor a manifest injustice occurred where counsel objected to the improper instruction on a permissive lesser-included offense but the issue was not raised on direct appeal).
 

 Unlike the situation in
 
 Ray
 
 and
 
 Bedford,
 
 Haliburton’s trial counsel objected to the instruction, and the issue was preserved and actually argued on appeal. The law at the time of the direct appeal was less clear, and this court affirmed. The. subsequent refinement in the law of
 
 Sanders
 
 does not mean that the potential error in this case can be raised at any time, even long after the conviction has become final.
 
 See Sanders v. State,
 
 946 So.2d 953 (Fla. 2006) (holding that, although the failure to instruct the jury on a necessarily lesser-included offense (one step removed) can be
 
 per se
 
 reversible error on direct appeal, the mere possibility that a jury might have exercised its “pardon power” cannot support an ineffective assistance of counsel claim in a postconviction motion).
 

 In addition to being barred as successive, none of the exceptions to the two-year time limitation of the postconviction rule are satisfied in this case. Fla. R.Crim. P. 3.850(b). The collateral attack against the conviction in this case is untimely and barred as successive.
 

 Not All “Fundamental Errors” May Be Raised at Any Time
 

 A fundamental error has been described as “error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 Gudinas v. State,
 
 693 So.2d 953, 961 (Fla.1997). Also, a fundamental error is described as one “where the interests of justice present a compelling demand for its application.”
 
 Sochor v. State,
 
 619 So.2d 285, 290 (Fla. 1993). Or, “error which goes to the foundation of the case or goes to the merits of the cause of action.”
 
 Sanford v. Rubin,
 
 237 So.2d 134 (Fla.1970).
 

 The “fundamental error” terminology is typically used in determining whether an error can be raised for the first time on direct appeal despite the lack of an objection at trial.
 
 See Maddox v. State,
 
 760 So.2d 89, 95-96 (Fla.2000). Nevertheless, some errors, which have also been
 
 *606
 
 referred to as “fundamental errors,” are so serious that they amount to a denial of substantive due process and may be raised
 
 at any time
 
 including for the first time in a postconviction motion.
 
 Hipp v. State,
 
 650 So.2d 91, 92 (Fla. 4th DCA 1995).
 
 See, e.g., Moore v. State,
 
 924 So.2d 840, 841 (Fla. 4th DCA 2006) (conviction for a nonexistent crime);
 
 Pass v. State,
 
 922 So.2d 279, 281 (Fla. 2d DCA 2006) (application of facially unconstitutional statute);
 
 Smith v. State,
 
 741 So.2d 576, 577 (Fla. 1st DCA 1999) (violation of the prohibition against double jeopardy).
 

 In this postconviction context, the inquiry focuses on whether a manifest injustice will occur if the error is not corrected.
 
 See, e.g., Silverstein v. State,
 
 985 So.2d 635 (Fla. 4th DCA 2008);
 
 Miller v. State,
 
 988 So.2d 138, 139 (Fla. 1st DCA 2008) (explaining that fundamental error and a manifest injustice result when a defendant is convicted of an offense for which the defendant could not have been convicted as a matter of law).
 

 Conclusion
 

 The alleged error in this case is not the type of error that can be raised at any time and which calls for disturbing the finality of this conviction. The evidence that Haliburton committed an aggravated battery by intentionally causing the victim great bodily harm was strong if not overwhelming. The jury had an opportunity to exercise its “pardon power” by convicting of simple battery but refused to do so. The instruction's potential effect on the jury’s “pardon power” is speculative and not grounds for relief in a postconviction motion. “The possibility of a jury pardon cannot form the basis for a finding of prejudice.”
 
 Sanders,
 
 946 So.2d at 960. Haliburton’s claim is based on his speculation that the jury may have been misled into believing it was exercising its pardon power. The jury, however, found him guilty of aggravated battery beyond a reasonable doubt.
 

 The instruction that the great bodily harm theory was a “lesser offense” in this case, although potentially erroneous, does not reach down into the validity of the trial such that the conviction on this count could not have been obtained without the error. Further, it did not become apparent that the instruction in this case might be in error until
 
 Sanders v. State,
 
 944 So.2d 203 (Fla.2006), was decided which was
 
 after the conviction in this case was already final.
 
 This refinement in the law does not apply retroactively to cases that were final on appeal.
 

 In addition to the above circumstances, Haliburton is serving a concurrent term of fifteen years in prison on one of the other counts for which he was convicted in this case. All of the above circumstances lead us to conclude that a manifest injustice does not result in this case, and we affirm the trial court’s order denying petitioner’s successive motions.
 

 WARNER, POLEN and STEVENSON, JJ., concur.
 

 [1]
 

 . We agree with the Second District Court of Appeal that even after
 
 Sanders
 
 the question of how enhancements and reclassifications affect whether an offense is truly a "lesser” offense is still problematic.
 
 See Chambers v. State,
 
 975 So.2d 444 (Fla. 2d DCA 2007). The difficulty is magnified if potential recidivist sentencing enhancements, such as the PRR statute, must also be taken into account when fashioning a verdict form. We do not believe that recidivist sentencing enhancements that are applied by a judge after the jury enters its verdict can reasonably be factored into the determination of how offenses should be presented on a verdict form.