# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-0838
_____

MIGUEL SIERRA,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

September 5, 2018

PER CURIAM.

AFFIRMED.

BILBREY and OSTERHAUS, JJ., concur; B.L. THOMAS, C.J., concurs with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

B.L. THOMAS, C.J., concurs.

This court has never addressed the merits of Appellant's case. Because the public deserves a written opinion in cases in which a criminal defendant is convicted of a serious violent crime, receives a sentence of life imprisonment and claims that his or her sentence is legally invalid, I provide the following explanation of my views in this case.

In January 2004, Appellant unlawfully entered the victim's home and waited for her to arrive. When the victim entered her home, she saw two feet sticking out from behind a kitchen door. Thinking it must be someone she knew, the victim instinctively and momentarily relaxed, before seeing a man covered in a blanket, except for his shoes, standing in her kitchen. The man, Appellant, then forcibly covered the victim with the blanket, threw her on the kitchen floor, and tried to cover the victim's face so she could not see her assailant. The victim fought off Appellant's attempts to cover her face with the blanket.

Appellant then choked the victim to force her to cease resistance. Appellant choked the victim so hard she briefly blacked out.

Appellant then pulled the victim from the kitchen floor and forced her to walk down into her dining room, all the while promising "not to hurt" her. When the victim again resisted, Appellant threw the victim on the floor of her hallway and again violent choked her. (As the victim testified to these events, she repeatedly cried during the trial.)

Appellant then again pulled the victim from the floor. The victim testified that she tried "to make him stop having control" over her. Appellant then pushed the victim toward her guest bedroom. The victim testified that she went into shock, "because I know what he's going to do. And so I tried to think of something." The victim testified that she told Appellant she had to use the bathroom. She then told Appellant that she had just begun her menstrual cycle and said to Appellant "you don't want to do this."

2

As Appellant forced the victim into her guest bedroom, she saw "how the bed was arranged," and "I knew [Appellant] was going to rape me." When questioned how she knew this, the victim testified that Appellant had tied the victim's dog leashes to the footboard of the bed and placed Vaseline next to the bed. Appellant threw the victim onto the bed, where she struggled again to escape. The two fell on the floor, and Appellant looked at the victim as if she had caused the fall, motivating her to deny that she caused Appellant to fall off the bed. She told him this to stop him from hurting her.

Appellant then pressed his bodyweight against the victim's chest on the bed and tied up her hands to the bed. As she continued to resist, Appellant repeatedly struck the victim in the face. He hit her so hard, she was temporarily blinded.

The victim then stopped resisting, because "it hurt so bad [and] I was so afraid of what he would do if I didn't stop." Appellant tied up both the victim's hands to the bed's foot board. Appellant then disrobed the victim and removed a sanitary napkin from the victim's body. He then performed oral sex on the victim. Appellant then told the victim to close her eyes and he committed forcible sexual intercourse with the victim. Thinking this terrifying ordeal was over, Appellant then started the process over again. Appellant then placed a knife near the victim while he committed additional sexual batteries against the victim. The victim testified that when she saw the knife, she thought Appellant was going to "either kill me or hurt me. I was scared to death." The ordeal lasted two hours.

Appellant then stole some of the victim's belongings and the victim's car. He was quickly apprehended not far from the victim's home.

At trial, the State presented evidence that demonstrated Appellant's DNA was found on the victim's body. Appellant's fingerprints were also identified in the victim's home. The victim's face was injured and battered from Appellant's violence against her.

3

Appellant testified that the victim consented to the sex and made false accusations against him, because she had owed him money for drugs and he asked for the money after the consensual sex. He also testified that he never struck the victim in her face, and she did not receive those injuries during the consensual sex. He claimed the victim's belongings found in his possession were "collateral" for the drug debt.

The jury found Appellant guilty of all charges: 1) kidnapping to facilitate a felony; 2) sexual battery; 3) sexual battery with a deadly weapon; 4) sexual battery with a deadly weapon; 5) burglary of a dwelling while armed; 6) grand theft; and 7) sexual battery with a deadly weapon. The trial court sentenced Appellant to life imprisonment on counts one, three, four and seven; 15 years in prison on count two; 30 years in prison on count five; and 5 years in prison on count six. All sentences were imposed concurrently, except the sentence for count five, burglary while armed, was imposed consecutively to the sentences imposed concurrently to each other. This Court affirmed Appellant's conviction and sentence without opinion in *Sierra v. State*, 919 So. 2d 441 (Fla. 1st DCA 2005).

Appellant filed his first collateral motion under Florida Rule of Criminal Procedure 3.850, asserting twenty claims, which the trial court denied. This court affirmed the denial of relief in ten claims but reversed to allow Appellant to amend ten insufficient claims. *Sierra v. State,* 993 So. 2d 1064 (Fla. 1st DCA 2008). On remand, Appellant raised only three claims, which were denied by the trial court, and this Court affirmed, without opinion. *Sierra v. State,* 53 So. 3d 1031 (Fla. 1st DCA 2011). Appellant then filed another collateral claim, which the trial court denied and this Court affirmed, again without written opinion. *Sierra v. State,* 86 So. 3d 1122 (Fla. 1st DCA 2012).

Appellant now files yet another collateral claim under rule 3.850, asserting that his conviction for kidnapping to facilitate a felony was a violation of due process, "because the movement and confinement of the victim was inconsequential or inherent in the sexual battery offense." He also asserts that his multiple convictions for sexual battery violated double jeopardy and due process. He also asserts that clearing the courtroom was a

4

violation of his right to a public trial, despite his agreement to the procedure.

All of Appellant's claims are time barred. Florida Rule of Criminal Procedure 3.850 requires all collateral claims filed under that rule to be filed within two years after a defendant's convictions become final, and this time period expired just under ten years ago, as mandate issued on this Court's decision affirming Appellant's convictions and sentences on January 12, 2006, and the instant motion was filed on January 4, 2018. His claim that the closed-courtroom procedure was a "manifest injustice" does not constitute grounds to avoid the time limitations under rule 3.850(b). Fla. R. Crim. P. 3.850(b)(1)-(3); *Cuffy v. State,* 190 So. 3d 86, 87 (Fla. 4th DCA 2015).

Furthermore, Appellant's claims are patently meritless, and his substantive due process argument, which he claims may be raised outside rule 3.850's two-year window, must fail. *See Haliburton v. State,* 7 So. 3d 601, 607 (Fla. 4th DCA 2009). Thus, I agree that the trial court's order denying relief should be affirmed.

_____

Miguel Sierra, pro se, Appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, for Appellee.