# Supreme Court of Florida

_____

No. SC20-1053
_____

**REGGIE EUGENE ALLEN,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

September 2, 2021
**<u>CORRECTED OPINION</u>**

COURIEL, J.

We have for review the decision in _Allen v. State_, 298 So. 3d 704, 707 (Fla. 1st DCA 2020), in which the First District Court of Appeal certified the following question of great public importance:

> IS THE SCHEDULE OF LESSER INCLUDED OFFENSES PROMULGATED BY THE FLORIDA SUPREME COURT IN 2018 IN ERROR IN CLASSIFYING SEXUAL BATTERY (§ 794.011(5)) AS A NECESSARILY LESSER INCLUDED OFFENSE OF CAPITAL SEXUAL BATTERY (§ 794.011(2)(a), Fla. Stat. (2018))?

We have jurisdiction. _See_ art. V, § 3(b)(4), Fla. Const. The answer to the certified question is yes. The schedule incorrectly classifies

sexual battery as a necessarily lesser included offense of capital sexual battery.

**I**

Reggie Eugene Allen was charged with three counts of sexual battery and one count of lewd or lascivious exhibition, all relating to incidents that took place between 2010 and 2016. Allen's victim, T.W., is the daughter of his ex-girlfriend. T.W. was born on March 25, 2001, and was therefore between nine years old and fifteen years old during the alleged incidents. At Allen's trial, she was seventeen years old, and testified to events that took place when she was between nine and thirteen years old.

Without fixing a precise date to any individual episode of abuse, T.W. testified that Allen put his mouth on her vagina over twenty times. Three incidents stood out to her. Each occurred at a different location in Bay County; T.W. and her mother moved several times during the years relevant to this case. T.W. testified that she lived at a home on Williams Avenue until she was eleven, when she moved to a development called Aztec Apartments. T.W.

testified that she lived there until she was thirteen, when she moved to a home on Sims Avenue.[1]

The first incident occurred when T.W. was nine, at her home on Williams Avenue.[2] T.W. testified that she and Allen were watching television in the living room when Allen started kissing her and rubbing her body. Allen rubbed her chest, touched her vagina, performed oral sex on her and then masturbated until

---

1. At trial, T.W.'s mother also testified, albeit tentatively, to a timeline detailing when she and T.W. moved between homes. She testified that she lived at Edgewood apartments until "2010 maybe[,]" moved to Aztec Apartments in 2010 when T.W. was "10 or 11[,]" moved from Aztec to Williams Avenue in "maybe 14" when T.W. "would have been about 15 or 16[,]" then moved to Sims in 2015, where the two of them stayed for "about three years." T.W.'s mother also testified that T.W. confronted her about Allen when the two were living on Sims Avenue and T.W. was either thirteen or fourteen.

2. T.W. testified that the day after informing police that Allen had assaulted her, she spoke to an investigator on the Child Protection Team at the Child Advocacy Center. The Child Protection Team is specially trained to interview children by asking non-leading questions and eliciting uncoerced responses. T.W. testified that, while speaking to the social worker, she misspoke and confused the times when she lived at Williams Avenue and at Aztec Apartments. T.W. also testified that she misspoke in a deposition taken by the defense, during which she testified that she moved to Aztec Apartments when she was ten. T.W. clarified her timeline at trial, testifying that she was nine and ten years of age at Williams Avenue, eleven through twelve at Aztec Apartments, and thirteen through fourteen at Sims Avenue.

ejaculation.  Then he told T.W. not to tell her mother what had happened.

T.W. testified that the second incident occurred when she was eleven, on the day she and her family moved to the Aztec Apartments development.  T.W. and Allen were alone upstairs when Allen told her to lie down so that he could perform oral sex on her, then did so.  T.W. recalled that she started shaking and crying, telling Allen she was scared.  T.W. testified that her mother was still at the Williams Avenue residence when the incident occurred.

The third incident occurred when T.W. was thirteen and living at the Sims Avenue address.  T.W. testified that she was lying on her bed in her room when Allen walked in, shut the door, and pulled down her pants.  T.W. testified that Allen placed his mouth on her vagina and performed oral sex on her.  At some point, T.W.'s mother entered the room and Allen threw a blanket over T.W., pretending that he had been "play-fighting" with her.

T.W. testified that, as to the other times Allen had performed oral sex on her, she could not recall the month, season, weather, or what time of year the incidents took place.  She was eleven (so, in 2012 or early 2013) when she first told her mother about all this.

When T.W.'s mother confronted Allen soon after, he denied everything. He moved out of the house on Williams Avenue shortly thereafter, but eventually moved back in when T.W. and her mother moved to the Aztec Apartments.

In 2017, a then-sixteen-year-old T.W. and her mother had a fight about T.W.'s close relationship with her half-brother. During the fight, police arrived and T.W. told them about Allen's actions. Again Allen denied all these allegations, this time to the police. Nonetheless, on November 13, 2017, Allen was charged by information with four criminal counts, covering three distinct time periods. In count I, the only count of conviction Allen appealed to the First District, he was charged with committing sexual battery on a person less than twelve years of age—capital sexual battery—on or between March 25, 2010, and March 24, 2012. Allen did not dispute at trial and does not dispute now that, during this time, T.W. was between nine and ten years old.

Allen took the stand at trial. He testified that he never put his mouth on T.W.'s genitals, masturbated in her presence, or interacted with her inappropriately. Allen testified that the living room at Williams Street had no television, contradicting T.W.'s

testimony that Allen assaulted her while the two were watching television. Allen also testified that he was never alone with T.W. at Aztec Apartments on the day he helped T.W.'s mother move, contradicting T.W.'s testimony that he assaulted her while the two were alone and T.W.'s mother was at the former residence.

At the conclusion of the evidence at trial, Allen requested that, as to count I, the jury be instructed on sexual battery as a necessarily lesser included offense of capital sexual battery. At the time, the Schedule of Lesser Included Offenses included in the Florida Standard Jury Instructions in fact listed sexual battery as a necessarily lesser included offense of capital sexual battery—otherwise known as a "category one" lesser included offense.[3] The State argued that it was illogical to provide such an instruction, because sexual battery applies to a victim twelve years and older, and it was undisputed that T.W. was nine or ten during the dates

---

3. At the time of Allen's trial, sexual battery was listed as a category one, necessarily included lesser offense of capital sexual battery. After the First District's decision in *Allen v. State*, however, the Supreme Court Committee on Standard Jury Instructions amended the standard jury instruction for capital sexual battery, moving sexual battery to a category two, permissive lesser included offense. Fla. Std. Jury Instr. (Crim.) 11.1 (2020).

alleged for count I. The trial court agreed and denied Allen's request, exercising its discretion to determine which instructions to give based on the facts adduced at trial. The trial court further explained that it had the power to determine what constituted a necessarily lesser included offense.

The trial court instructed the jury as follows: "As to Count I, sexual battery, to prove the crime of sexual battery on a person less than 12 years of age, the State must prove the following three elements beyond a reasonable doubt: one, Reggie Eugene Allen committed an act on [T.W.] in which the sexual organ of [T.W.] had union with the mouth of Reggie Eugene Allen; and two, at the time of the offense, [T.W.] was less than 12 years of age; and three, at the time of the offense, Reggie Eugene Allen was 18 years of age or older." The court explained that if the jury was not convinced that Allen had committed capital sexual battery, "there may be evidence that he committed other acts that would constitute a lesser included crime." The court directed, "[I]f you decide that the main accusation has not been proved beyond a reasonable doubt, you will next need to decide if the defendant is guilty of any lesser included crime." The jury was then instructed as to two other

- 7 -

lesser included offenses: lewd or lascivious battery on a victim less than sixteen years of age, and battery.

As to count III, which charged Allen with capital sexual battery on or between March 25, 2012, and March 24, 2014,[4] the court instructed the jury on sexual battery, lewd or lascivious battery, and battery as lesser included offenses of capital sexual battery.

The jury found Allen guilty as charged on all four counts. Allen appealed, arguing that the trial court erred in denying his motion to instruct the jury on sexual battery as a category one, necessarily lesser included offense of capital sexual battery. The First District affirmed and certified to this Court the question we have before us.

## II

Because T.W.'s age is undisputed, the First District's decision is purely a question of law, which we review *de novo*. *Khianthalat v. State*, 974 So. 2d 359, 360 (Fla. 2008) ("Because this matter involves a legal determination based on undisputed facts, this Court's standard of review is de novo."). The trial court's rulings on

---

4. It is undisputed that T.W. was between eleven and twelve during this time period.

jury instructions generally get the benefit of the doubt. *See State v. Bryan*, 287 So. 2d 73, 75 (Fla. 1973) ("[W]e recognized the importance of the trial judge on the scene who has the 'feel' of the case, the psychology of its movement through trial and what aspects appear from subtle inflections and overtones to be important in the jury's mind and for its decision. That is one of the reasons that a trial court's decision has historically had the presumption of correctness on appeal."). As it happens, in this case, at trial, defense counsel, the prosecutor, the trial court, and the version of the jury instructions used all referred to an incorrect version of the sexual battery statute, section 794.011(5).[5] Our

---

5. Each referred to the version of the statute in effect at the time of Allen's trial in 2019; however, "it is firmly established law that the statutes in effect at the time of commission of a crime control as to the offenses for which the perpetrator can be convicted, as well as the punishments which may be imposed." *State v. Smith*, 547 So. 2d 613, 616 (Fla. 1989). The sexual battery statute in effect during the time period covered by count I (March 25, 2010, to March 24, 2012) applied to any victim age twelve or older. The post-2014 sexual battery statute contains two classes of victim: those twelve years of age and older but younger than eighteen, and those eighteen years of age and older. Regardless of which version of the statute is used, a charge of sexual battery applies only to a victim twelve or older at the time of the alleged offense, and it is undisputed that T.W. was younger than twelve during the time period covered by count I.

consideration of whether sexual battery is a necessarily lesser included offense of capital sexual battery is in any event the same, whatever version of the statute is used.

## A

A lesser included offense is one whose elements are entirely contained within the elements of another, greater, offense. *Sanders v. State,* 944 So. 2d 203, 206 (Fla. 2006). To determine whether and how an offense qualifies as a lesser included offense, "this Court's precedent calls for a comparison of statutory elements." *Pizzo v. State,* 945 So. 2d 1203, 1206 (Fla. 2006) (holding that, for double jeopardy analysis, grand theft is a lesser included offense of organized fraud because all the statutory elements of grand theft are subsumed by the statutory elements of organized fraud). Lesser included offenses fall within two categories: necessary (or necessarily—we have said it both ways[6]) and permissive. *Sanders,*

---

6. *Compare Coicou v. State*, 39 So. 3d 237, 242 (Fla. 2010) ("The question presented here requires us to determine whether attempted second-degree murder is either a necessary or permissive lesser-included offense of attempted first-degree felony murder.") *with State v. Wimberly*, 498 So. 2d 929, 932 (Fla. 1986) ("A 'necessarily lesser included offense' is, as the name implies, a lesser offense that is always included in the major offense.").

944 So. 2d at 206. "Necessarily lesser included offenses are those offenses in which the statutory elements[7] of the lesser included offense are always subsumed within those of the charged offense." *Id.* In other words, every element of the lesser offense is always also an element of the greater. *See, e.g., State v. Terry*, 336 So. 2d 65, 67 (Fla. 1976) (explaining that elements are subsumed when "the burden of proof of the major crime cannot be discharged[] without proving the lesser crime as an essential link in the chain of evidence"). If a defendant is found to have committed all the elements of a greater crime, he has necessarily committed all the elements of a lesser crime, because "the latter is an inherent component of the former." *Roberts v. State*, 242 So. 3d 296, 299 (Fla. 2018) (quoting *State v. Weller*, 590 So. 2d 923, 926 (Fla. 1991)).

---

7. An element is a component of a charged offense that a jury must find proven beyond a reasonable doubt to convict a defendant. *See In re Winship*, 397 U.S. 358, 363 (1970) (quoting *Davis v. United States*, 160 U.S. 469, 493 (1895) ("No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged.")).

For example, theft and robbery both consist of the taking of property of another with intent to temporarily or permanently deprive that person of the property. § 812.13, Fla. Stat. (2020); § 812.014, Fla. Stat. (2020). An unlawful taking with intent to deprive is sufficient to prove larceny. *McCloud v. State*, 335 So. 2d 257, 258 (Fla. 1976). Robbery requires, in addition, the unlawful taking to occur by "use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (2020). We have explained that "[a]ny degree of force suffices to convert larceny into a robbery. Where no force is exerted upon the victim's person, as in the case of a pickpocket, only a larceny is committed." *McCloud*, 335 So. 2d. at 258-59; *see also Terry*, 336 So. 2d at 67 (holding that to prove beyond a reasonable doubt that a defendant committed a robbery, the state must necessarily also prove larceny, because every robbery necessarily includes a larceny). So, larceny is a necessarily lesser included offense of robbery. *State v. Bruns*, 429 So. 2d 307, 310 (Fla. 1983) ("Larceny is necessarily included in the crime of robbery.").

Similarly, "[a]ttempted manslaughter by act is a necessarily lesser included offense of attempted second-degree murder because

- 12 -

attempted second-degree murder contains all of the elements of the crime of attempted manslaughter by act." *Walton v. State*, 208 So. 3d 60, 64 (Fla. 2016). Likewise, "[t]he elements of manslaughter are always subsumed within the elements of second-degree felony murder because both offenses require some action by the defendant that ultimately causes the victim's death." *Dean v. State*, 230 So. 3d 420, 423 (Fla. 2017). Second-degree felony murder additionally requires that a defendant have committed an enumerated felony. *Id.*

A permissive, or "category two," lesser included offense exists when "the two offenses appear to be separate [on the face of the statutes], but the facts alleged in the accusatory pleadings are such that the lesser [included] offense cannot help but be perpetrated once the greater offense has been." *Sanders*, 944 So. 2d at 206 (alteration in original) (quoting *State v. Weller*, 590 So. 2d 923, 925 n.2 (Fla. 1991)). It is, in other words, at least in part a function of how a case is charged and what facts are alleged that results in two offenses being related to each other this way.

**B**

The rule that a jury be allowed to find a defendant guilty of a lesser included offense "originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged." *Beck v. Alabama*, 447 U.S. 625, 633 (1980); *see also Keeble v. United States*, 412 U.S. 205, 208 (1973) ("[T]he lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged[.]"). But courts have long recognized that a lesser included offense "can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Beck*, 447 U.S. at 633. As the United States Supreme Court has explained, "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Id.* at 634. Allowing a "third option" to convict a defendant of a lesser included offense "ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Id.*

State courts, including ours, "have unanimously held that a defendant is entitled to a lesser included offense instruction where the evidence warrants it." *Id.* at 636; *see also Terry*, 336 So. 2d at 67 ("Therefore, if the trial judge . . . found sufficient evidence to instruct the jury on the major offense of assault with intent to commit murder in the first degree, he should have instructed the jury on the *necessarily* included lesser offense of bare assault."). We have long required an instruction for any lesser offense "all the elements of which are alleged in the accusatory pleadings and supported by the evidence adduced at trial." *State v. Weller*, 590 So. 2d 923, 926 (Fla. 1991). We have also held that, "[o]nce the judge determines that [an] offense is a necessarily lesser included offense, an instruction must be given." *State v. Wimberly*, 498 So. 2d 929, 932 (Fla. 1986). Under Florida Rule of Criminal Procedure 3.510(b), as interpreted by our Court in *Wimberly,* a trial judge "has no discretion in whether to instruct the jury on a necessarily lesser included offense." *Knight v. State*, 286 So. 3d 147, 154 (Fla. 2019) (quoting *Wimberly*, 498 So. 2d at 932).

Our standard jury instructions and the schedule of lesser included offenses are promulgated and updated by the Supreme

- 15 -

Court Committee on Standard Jury Instructions in Criminal Cases, created by this Court. *See In re Amendments to Fla. Rules of Jud. Admin., Fla. Rules of Civ. Proc., & Fla. Rules of Crim. Proc.— Standard Jury Instructions*, 45 Fla. L. Weekly S88, S88 (Fla. Mar. 5, 2020). The Committee is "authorized to develop and approve, by two-thirds vote, new and amended standard jury instructions to be published for use." *Id.* at S88. Prior to the recent change, the Committee prepared new and amended standard jury instructions, and "report[ed] those instruction changes to the Court, which, in turn, authorize[d] the instructions for publication and use in a written opinion." *Id.* at S88. In cutting the Court's involvement in development and authorization of standard jury instructions, we recognized the two-step process as cumbersome, and that "some wrongly believe that by authorizing for publication and use standard instructions prepared by the committees, the Court has ruled on the legal correctness of those instructions." *Id.* at S88.

Before our work through the Committee, Florida courts were not restricted to two classes of lesser included offenses. It was once our law that lesser included offenses were divided into four categories: (1) crimes divisible into degrees, (2) attempts to commit

offenses, (3) attempts necessarily included in the offense charged, and (4) offenses which may or may not be included in the offenses charged, depending on the accusatory pleading and the evidence. *Brown v. State*, 206 So. 2d 377, 381 (Fla. 1968). Our decision in *Brown,* however, "required instructions to the jury for offenses for which there [was] no support in the evidence and no argument by counsel, and as a result . . . caused jury confusion." *In re Use by Trial Cts. of Standard Jury Instructions in Crim. Cases*, 431 So. 2d 594, 597 (Fla. 1981). Nine years after *Brown,* "this Court requested the committee to revise and modify the instructions to make them more easily understood by citizen jurors, to consider the approval of instructions and a handbook for a grand jury, and to establish a schedule of lesser included offenses." *Id.* at 595. The Committee recommended consolidating the *Brown* categories into two groups: (1) offenses necessarily included in the offense charged, depending on the accusatory pleading and the evidence, including all attempts and some lesser degrees of offenses, and (2) offenses which may or may not be included in the offense charged, depending on the accusatory pleading and the evidence, including all attempts and some lesser degrees of attempts. *In re Use by Trial Cts. of Standard*

- 17 -

*Jury Instructions in Crim. Cases*, 431 So. 2d at 596. The Committee also created a schedule of lesser included offenses which reflected the two new categories. *Id.* at 597. We adopted the Committee's proposal, explaining that "[t]he schedule of lesser included offenses is designed to be as complete a listing as possible for each criminal offense." *Id.* The schedule has always been intended to be "an authoritative compilation upon which a trial judge should be able to confidently rely." *Id.*

Of course, "the Schedule of Lesser Included Offenses included in the Florida Standard Jury Instructions is not the final authority on lesser included offenses." *Williams v. State*, 957 So. 2d 595, 599 (Fla. 2007) (rejecting a defendant's objection to an instruction on a lesser offense on the basis that it was missing from the schedule of lesser included offenses). Trial courts have the "responsibility to determine and properly instruct the jury on the prevailing law." *Standard Jury Instructions in Crim. Cases (95-1)*, 657 So. 2d 1152, 1153 (Fla. 1995). To fulfill this responsibility, "[t]he standard jury instructions appearing on The Florida Bar's website may be used by trial judges in instructing the jury in every trial to the extent that the instructions are applicable," but if the court "determines that an

applicable standard jury instruction is erroneous or inadequate . . . the judge shall modify the standard instruction or give such other instruction as the trial judge determines to be necessary to instruct the jury accurately and sufficiently on the circumstances of the case." Fla. R. Gen. Prac. & Jud. Admin. 2.580.[8]

## C

Applying these principles to the question before us, it becomes clear that sexual battery is not a necessarily lesser included offense of capital sexual battery, because the elements of sexual battery are in fact never subsumed within the elements of capital sexual battery.

A sexual battery charge requires that a victim be twelve or older, whereas a capital sexual battery charge requires that a victim be younger than twelve. Because the elements of sexual battery, the lesser offense, are not "always subsumed within those of the

---

8. Our amendment to rule 2.580, Standard Jury Instructions, further adds, "If the trial judge modifies a standard jury instruction or gives another instruction, upon timely objection to the instruction, the trial judge shall state on the record or in a separate order the respect in which the judge finds the standard instruction erroneous or inadequate or confusing and the legal basis for varying from the standard instruction." Fla. R. Gen. Prac. & Jud. Admin. 2.580.

charged offense," capital sexual battery, it was incorrect for the Supreme Court Committee on Standard Instructions in Criminal Cases to declare sexual battery as a category one necessarily lesser included offense of capital sexual battery. *Sanders*, 944 So. 2d at 206.

Nor, in this case, does sexual battery qualify as a permissive lesser included offense as to count I. It takes two steps to reach this conclusion. We took the first step above: when we compare the elements of the offenses, we find that the elements of the lesser offense are not entirely contained within the elements of the greater, because a victim cannot simultaneously be under the age of twelve, as required for one offense, and over that age, as required for the other. But, and here is the second step, none of the facts alleged or evidence introduced at trial, including the ambiguities in the timeline of the alleged crimes, rebut the undisputed evidence that T.W. was younger than twelve during the period covered by count I.

Because count I only covered the time before T.W. turned twelve, it was impossible for the jury to find that Allen had committed sexual battery in that count of conviction, as at no point during the time covered in count I was the victim twelve or older.

Instruction on noncapital sexual battery as a permissive lesser included offense was, however, acceptable as to count III, which charged Allen with capital sexual battery. The fact-specific element of the permissive lesser offense was whether T.W. was twelve at the time of the sexual battery in this count. Count III covered a period between when T.W. was eleven and almost thirteen years old. To find Allen guilty, the jury was required to find beyond a reasonable doubt that Allen had battered T.W. when she was eleven, twelve, or both. The charging document alleged that Allen unlawfully committed sexual battery on "a person less than twelve years of age," and while the state introduced evidence to support the allegation that Allen battered T.W. when she was eleven, a reasonable jury could have also found that the incident had occurred when she was twelve. Therefore, while the trial judge might have given the same instruction as to counts I and III, it was no abuse of discretion to instruct the jury on sexual battery as a lesser included offense of capital sexual battery as to count III, for the jury may have found that Allen had assaulted T.W. when she was twelve, but not when she was eleven.

- 21 -

## D

Our conclusion today squares with the plain meaning of section 794.011, Florida Statutes (2018). Florida's sexual battery statute provides that someone eighteen years of age or older who commits sexual battery upon a person less than twelve years of age commits a capital felony. § 794.011(2)(a), Fla. Stat. (2018). Conversely, the statute provides that someone eighteen years of age or older who commits sexual battery upon a victim eighteen years of age or older commits a felony of the second degree. § 794.011(5)(a), Fla. Stat. (2018). The structure and language of the statute mean that those who commit sexual battery upon a person under the age of twelve are treated more harshly than those who commit the same crime upon persons not in that statutorily prescribed age group. In that respect, this provision is similar to Florida's battery statute, which makes it a third-degree felony to commit battery upon a victim sixty-five years old or older what would be misdemeanor battery on a younger adult. § 784.08(2)(c), Fla. Stat. (2020).

The special protections that the statutes afford to younger children who are sexually battered and older adults who are victims of simple battery illustrate the problem with Allen's argument that,

like the value of property stolen in a theft charge[9] or the quantity of narcotics trafficked,[10] age is a one-way street: the older you are, the less culpable a perpetrator is for a battery upon you. It is not so. The statute at issue here does not present a gradient of culpability, but a binary choice; for its purposes, either a victim is under twelve, or he or she is not. Here the law offers special protection to the young, elsewhere to the old. We have upheld the permissibility of that legislative choice over the years. *See Adaway v. State*, 902 So. 2d 746, 751 (Fla. 2005) (sexual battery is "especially harmful to young victims" and "[e]ven when [child sexual abuse] leaves no physical scars, it can create emotional damage that lasts a lifetime.") (quoting *Gibson v. State*, 721 So. 2d 363, 368 (Fla. 2d DCA 1998)).

## III

Because sexual battery is not a necessarily lesser included offense of capital sexual battery, we answer the certified question in the affirmative and approve the decision of the First District Court of Appeal.

---

9. *See* § 812.014(2), Fla. Stat. (2020).
10. *See* § 893.135, Fla. Stat. (2020).

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, and GROSSHANS, JJ., concur.
LABARGA, J., concurs with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring.

While I agree that the crime of sexual battery is not a necessarily lesser included offense of capital sexual battery, I write to underscore that in a case where the age of the victim is in dispute, the defendant would be entitled to a jury instruction on sexual battery as a permissive lesser included offense.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance

First District - Case No. 1D19-1315

(Bay County)

Jessica Yeary, Public Defender, and Victor Holder, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

for Petitioner

Ashley Moody, Attorney General, and David Welch, Assistant Attorney General, Tallahassee, Florida,

for Respondent