[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14602

_____

DEMETRIUS CAREY,

Petitioner-Appellant,

*versus*

DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:17-cv-62458-DPG

_____

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal from the denial of a petition for a writ of habeas corpus requires us to decide whether trial counsel provided ineffective assistance by requesting that the jury be instructed on lesser included offenses. We hold that counsel did not. And because the petitioner's claim that insufficient evidence supported his conviction was denied by the state courts based on an adequate and independent state procedural ground, he is also not entitled to relief on that claim. We affirm the denial of the petition.

## I. BACKGROUND

Elena Carrasco was shot and killed during a robbery in 2005. Fourteen-year-old Demetrius Carey was charged with Carrasco's murder and with armed robbery. The indictment charged premeditated murder "and/or" felony murder. The indictment also charged Carey with using a firearm to commit both crimes, and the use of a firearm would reclassify the felonies as higher-degree offenses and enhance his sentence. *See generally* FLA. STAT. § 775.087. The prosecutors' theory at trial was that Carey committed the robbery and the murder by shooting the victim. Carey denied any involvement.

During the charging conference, the parties and trial judge discussed jury instructions on lesser offenses at length. They began with the murder charge. At first, defense counsel did not request

jury instructions on any lesser offenses. But after the prosecutors requested jury instructions on second-degree murder "with a firearm" and manslaughter "with a firearm," defense counsel requested instructions on "all" lesser included offenses. Regarding the armed robbery charge, both parties at first did not request instructions on lesser offenses, but defense counsel later requested jury instructions on the lesser included offenses of robbery with a weapon and robbery.

The jury convicted Carey of second-degree murder and robbery. The verdict form also included interrogatories about the firearm enhancement. The jury had to determine whether Carey "actually possess[ed]," "actually discharge[d]," or "actually inflict[ed] death . . . as a result of discharging" a firearm. The jury answered "no" to all three firearm interrogatories regarding both crimes.

Carey moved for a new trial. He argued that because the victim was undisputedly shot, the jury's finding that Carey did not possess or use a firearm meant that Carey did not commit the murder or the robbery. He reasoned that the conviction must have been based on a theory that Carey was present when someone else committed the crimes. But he was not charged as an accessory, nor was the jury instructed on a theory of vicarious liability. He contended that the evidence could not support the convictions and that the verdict was legally inconsistent.

The trial judge denied the motion for a new trial and sentenced Carey to life imprisonment for the second-degree murder and a concurrent 15 years of imprisonment for the robbery. Carey

pursued an unsuccessful direct appeal. *See Carey v. State*, 27 So. 3d 39 (Fla. Dist. Ct. App. 2010). Carey then sought postconviction relief in the state courts.

Carey filed three motions under Florida Rule of Criminal Procedure 3.850. The trial court denied the first motion on all grounds except one: it granted an evidentiary hearing on Carey's claim that his trial counsel was ineffective for incorrectly advising him that he did not qualify as a "youthful offender" for sentencing. But after the Supreme Court held that the Eighth Amendment restricts life sentences for juvenile offenders, *see Miller v. Alabama*, 567 U.S. 460 (2012), Carey moved to correct his life sentence for the murder conviction. The parties agreed to a sentence of 30 years of imprisonment, and Carey was resentenced. Carey's second Rule 3.850 motion was denied in its entirety.

After he was resentenced, Carey filed a third motion that asserted two grounds for relief. First, he argued that his trial counsel was ineffective for requesting jury instructions on the lesser offenses of which he was convicted. Second, he argued that insufficient evidence supported his murder conviction. The trial court denied the motion and denied Carey's motion for reconsideration. And the Fourth District Court of Appeal affirmed summarily.

Carey then filed a federal petition for a writ of habeas corpus that asserted the same two claims for relief that he alleged in his third Florida Rule 3.850 motion. The district court denied the petition and denied Carey's motion for reconsideration. It determined that both of Carey's claims were procedurally barred because the

state court had denied the claims based on adequate and independent grounds under state law. But it agreed with Carey that the procedural default of his claim of ineffective assistance of counsel was excused under *Martinez v. Ryan*, 566 U.S. 1, 14 (2012), because Carey filed his first state motion *pro se*, he was not appointed an attorney until after the claim became untimely under state law, and his claim was a substantial one. When it considered the merits of the claim of ineffective assistance of counsel *de novo, see Rompilla v. Beard*, 545 U.S. 374, 390 (2005), the district court denied relief on the ground that Carey could not prove that the decision to request jury instructions on lesser offenses prejudiced his defense. And Carey did not argue that his claim of insufficient evidence was reviewable despite his procedural default.

We granted a certificate of appealability on two issues: whether the district court correctly determined that Carey could not establish prejudice from the jury instructions requested by his counsel and whether the district court correctly determined that the state court dismissed Carey's claim of insufficient evidence as impermissibly successive. In briefing Carey's claim of ineffective assistance of counsel, both parties addressed counsel's performance as intertwined with prejudice. As a result, at oral argument, the parties consented to expanding the certificate of appealability to include the performance element of Carey's claim of ineffective assistance of counsel. *Cf. Clark v. Crosby*, 335 F.3d 1303, 1307 (11th Cir. 2003) (exercising discretion to expand the certificate of appealability after oral argument); *Dell v. United States*, 710 F.3d 1267,

1272–73 (11th Cir. 2013) (expanding the certificate of appealability and collecting cases).

We appointed Melissa Salinas of the University of Michigan Law School's federal appellate litigation clinic as counsel for Carey. Max Vogel presented oral argument. We thank Ms. Salinas, Mr. Vogel, and the clinic for accepting the appointment and for their excellent representation.

## II. STANDARD OF REVIEW

"We review *de novo* a district court's grant or denial of a habeas corpus petition." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005). "An ineffective assistance of counsel claim is a mixed question of law and fact subject to *de novo* review." *Id.* "We review *de novo* the determination of a district court that a habeas petitioner is procedurally barred from raising a claim in federal court." *Henry v. Warden*, 750 F.3d 1226, 1230 (11th Cir. 2014).

## III. DISCUSSION

We divide our discussion into two parts. First, we hold that because the decision to request jury instructions on lesser included offenses was reasonable, Carey failed to prove that counsel performed deficiently. Second, we hold that because the state court relied on a state rule against successive motions to deny Carey's claim of insufficient evidence, he is procedurally barred from pursuing that claim in federal court.

### A. Carey Failed to Prove Deficient Performance.

The Sixth Amendment guarantees the right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). When a petitioner argues that his right to effective assistance was violated, he must prove "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. And he must prove "that the deficient performance prejudiced the defense." *Id.* at 687.

Because a petitioner must prove both deficient performance and prejudice, a court need not address one element if it determines that the petitioner has failed to prove the other. *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). And we may affirm on any ground supported by the record. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012). Although the district court denied relief because it determined that Carey failed to prove prejudice, we need not decide that issue. We affirm the denial of relief because Carey failed to prove deficient performance.

We must be "highly deferential" when we evaluate counsel's performance. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted). Deficient performance

means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Carey makes two arguments for why the decision to request jury instructions on lesser included offenses was objectively unreasonable. First, he argues that the requested instructions were confusing or misleading in the light of the evidence. He contends that because the robbery and murder were undisputedly committed *with* a firearm, the requested instructions on second-degree murder without the firearm enhancement and on robbery were inapplicable. Second, he argues that even if the instructions on the lesser offenses were correct and lawful, counsel's decision to request those instructions was deficient performance because "[a]ny benefit was illusory"—at least as to the murder charge—given that "[b]oth second degree murder with a firearm and second degree murder without a firearm carried the same potential life sentence that the court imposed." Both arguments are unavailing.

The jury instructions on second-degree murder and on robbery were neither confusing nor inapplicable. Under Florida law, lesser offenses are divided into two categories: necessarily included lesser offenses, which are "those offenses in which the statutory elements of the lesser included offense are always subsumed within those of the charged offense," *Sanders v. State*, 944 So. 2d 203, 206 (Fla. 2006), and permissive lesser offenses, which exist when "the two offenses appear to be separate on the face of the statutes, but the facts alleged in the accusatory pleadings are such that the lesser

included offense cannot help but be perpetrated once the greater offense has been," *id.* (alterations adopted) (internal quotation marks and citation omitted). A "jury may convict the defendant of . . . any offense that as a matter of law is a necessarily included offense or a [permissive] lesser included offense of the offense charged in the indictment or information and is supported by the evidence. The judge shall not instruct on any lesser included offense as to which there is no evidence." FLA. R. CRIM. P. 3.510(b).

According to the schedule of lesser offenses applicable at the time of Carey's trial, which is "an authoritative compilation," *In re Use by Trial Courts of Standard Jury Instructions in Criminal Cases*, 431 So. 2d 594, 597 (Fla. 1981), second-degree murder is a necessarily included lesser offense of first-degree premeditated murder, and robbery is a necessarily included lesser offense of armed robbery, *see* Fla. Std. Jury Instr. (Crim.) 7.2 Murder—First Degree (2008); Fla. Std. Jury Instr. (Crim.) 15.1 Robbery (2008). Carey contends that the evidence did not support the commission of any offense without a firearm, but a necessarily included lesser offense, by definition, is *always* included in the major offense. *See State v. Wimberly*, 498 So. 2d 929, 930–32 (Fla. 1986) (holding that the last sentence of Rule 3.510(b) applies only to permissive lesser offenses, not to necessarily included lesser offenses, and explaining that necessarily included lesser offenses are "always included in the major offense"); *Wheat v. State*, 433 So. 2d 1290, 1291 (Fla. Dist. Ct. App. 1983) ("[I]n any case in which there is sufficient proof of the greater offense to go to the jury, there is inescapably proof of a

lesser offense which is *necessarily* included within the offense charged.").

Under Florida law, it is irrelevant whether, as Carey contends, the trial judge and the prosecution thought there was no evidence that the murder and robbery were committed *without* a firearm. If the instruction is requested and the trial judge determines that an "offense is a necessarily lesser included offense, an instruction *must* be given," and the trial judge has no discretion in whether to provide the instruction or not. *Wimberly*, 498 So. 2d at 932; *see also Thompson v. State*, 487 So. 2d 311, 312 (Fla. Dist. Ct. App. 1986) ("As a matter of law, robbery without a weapon . . . is a necessarily [included lesser] offense of robbery while carrying a firearm . . . [and once requested,] although the trial court found that there was a total lack of evidence to support a jury finding that the robbery in question was committed without a weapon or firearm," the defendants were entitled to that instruction.).

The only difference between the jury instructions requested by the prosecution and those requested by Carey's trial counsel is the sentencing enhancement and felony reclassification under section 775.087 for the use of a firearm. But the sentencing enhancement is only that—a sentencing enhancement—and not an element of an offense. A jury's verdict regarding a sentencing enhancement under section 775.087 is "analytically separate from verdicts for underlying crimes, and neither eliminates nor supplies an element of the underlying crimes." *Birch v. State*, 248 So. 3d 1213, 1219 (Fla. Dist. Ct. App. 2018); *see also Sanders*, 944 So. 2d at 207

("While reclassification and enhancement statutes have made it difficult for trial courts to prepare appropriate verdict forms, the basic premise of what constitutes a proper lesser included offense has not changed.").

Carey's other argument—that the decision to request the lesser-included instructions was unreasonable because "[a]ny benefit was illusory" as "[b]oth second degree murder with a firearm and second degree murder without a firearm carried the same potential life sentence that the court imposed"—fails for two reasons. First, it ignores the difference between a mandatory sentence and a maximum sentence. Second, it improperly relies on a benefit of hindsight—knowledge of the sentence imposed—to criticize counsel's decision. *See Strickland*, 466 U.S. at 689 (holding that courts must "evaluate the conduct from counsel's perspective at the time").

Carey's counsel knew that the jury would be instructed on second-degree murder *with* the firearm enhancement, as the prosecution requested. Ordinarily, second-degree murder is a first-degree felony with a maximum penalty of life imprisonment. FLA. STAT. § 782.04(2). But if the jury had determined that the firearm enhancement and reclassification statute applied, then that first-degree felony would have been reclassified as a life felony—meaning that instead of a *possible* life sentence, Carey would have faced a *certain* life sentence. *See id.* §§ 775.087(1)(a), 775.082(3)(a)(3). The difference between mandatory life imprisonment and possible life imprisonment is not an illusory benefit. And that the Supreme

Court later limited the application of mandatory life sentences to juvenile offenders in *Miller*—resulting in Carey's reduced sentence—does not affect the inquiry because Carey's trial counsel could not have been expected to anticipate that ruling. Furthermore, although Carey argued that his young age at the time of his crimes altered his sentencing exposure, Florida's youthful-offender provision in fact supplies an additional basis to find that trial counsel's request was reasonable. If Carey had been convicted of second-degree murder with the firearm enhancement and reclassification, that life felony conviction would have made him ineligible for youthful-offender consideration. *See* FLA. STAT. § 958.04(1)(c).

Carey again relies on hindsight to argue that because the jury convicted him of second-degree murder and robbery instead of greater offenses, the prosecution must have failed to prove beyond a reasonable doubt that he was guilty of any greater offenses. In other words, he argues that he would have been better off if the jury were forced either to convict him of second-degree murder *with* the firearm enhancement and reclassification or to acquit him entirely. An "all-or-nothing" strategy may make sense in theory, but the Supreme Court has acknowledged that there is a "substantial risk that the jury's practice will diverge from theory" and the jury will likely "resolve its doubts in favor of conviction." *Beck v. Alabama*, 447 U.S. 625, 634 (1980) (quoting *Keeble v. United States*, 412 U.S. 205, 212–13 (1973)). So, defendants can benefit from jury instructions on lesser included offenses. *Id.* at 633.

Counsel could not have known with certainty what the outcome would be. It was reasonable to afford the jury "a less drastic alternative." *Id.* And although we must assume when considering prejudice that the "jury acted according to law," that assumption does not apply to reviewing counsel's performance. *Strickland*, 466 U.S. at 694–95. A jury's "whimsy" or "unusual propensities toward harshness or leniency" "may actually have entered into counsel's selection of strategies and . . . may thus affect the performance inquiry." *Id.* at 695.

### B. Carey's Insufficient-Evidence Claim Is Barred.

Subject to certain exceptions, an application for a federal writ of habeas corpus must be denied if the applicant has not "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). And if the state courts deny the claim based on a state procedural rule that is independent of federal law, the claim is procedurally defaulted and federal courts ordinarily cannot grant relief. *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010). The district court found that the insufficient-evidence claim was procedurally barred. It determined that the state court relied on two state procedural rules to deny Carey's claims: timeliness and successiveness. It found that the state court's decision that the motion was untimely was not an adequate basis to deny the motion because the claim was in fact timely under state law. But the state court's decision that the motion was impermissibly successive was an adequate and independent state ground to deny relief. And Carey did

not argue that an exception allowed federal review of the claim despite the procedural default.

The Department does not dispute that timeliness was an inadequate basis to deny the Rule 3.850 motion. And Carey does not deny that the rule against successive motions *could* serve as an adequate and independent state ground for denying relief; instead, he argues that the state court *did not* rely on that rule when it denied his motion. So, the issue is whether the state court in fact relied on the rule against successive motions when it denied relief.

Because the Florida District Court of Appeal, the last state court to consider Carey's insufficient-evidence claim, summarily affirmed the denial, we must "look through" that unexplained decision "to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). That last reasoned state-court decision was issued by the trial court, which denied Carey's motion "for the reasons contained in the State's Response . . . incorporated herein by reference." So, we must examine the State's response to Carey's third Rule 3.850 motion to determine whether the motion was denied as impermissibly successive.

We hold that the State's response—and the court decision incorporating it by reference—relied on successiveness as a ground to deny relief. The State argued that Carey "ha[d] not shown good cause why these new claims could not have been raised in his prior timely motion." The requirement of "good cause" is relevant only to determining whether a motion is impermissibly successive, not

to whether it is timely. *Compare* FLA. R. CRIM. P. 3.850(h) (stating that a court may dismiss a second or successive motion if new grounds are alleged and the judge finds that "there was no good cause for the failure of the defendant . . . to have asserted those grounds in a prior motion") *with* FLA. R. CRIM. P. 3.850(b) (governing time limitations, without mention of "good cause").

Carey argues that we should construe this portion of the State's response as an argument based on timeliness, not successiveness. He correctly points out that the State's response cited Florida Rule of Criminal Procedure 3.850(f) in support of its argument and that Rule 3.850(f), now and at the time the State responded in 2016, governs the disposition of a motion based on consideration of factors that include timeliness but not successiveness. *See* FLA. R. CRIM. P. 3.850(f). Rule 3.850(h) restricts successive motions. But Rule 3.850(f) *used to* govern successive motions and was redesignated as Rule 3.850(h) in 2013. *See In re Amends. to Fla. Rules of Crim. Proc.*, 132 So. 3d 734, 738 (Fla. 2013). And because the substance of the State's argument about "good cause" aligns with the rule on successiveness—3.850(h)—and has no relation to current Rule 3.850(f) or to Rule 3.850(b), which governs timeliness, we agree with the district court that the State's response relied on successiveness.

Carey also argues that the state court was required "to make a 'plain statement' that [its] decision 'rest[ed] on adequate and independent state grounds," quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983), but he misreads *Long*. As the Supreme Court

clarified in *Coleman v. Thompson*, 501 U.S. 722, 735–36 (1991), the "plain statement" requirement comes into play only when a state-court decision refers to both state law and federal law and it is unclear whether the state-law ground was an independent basis for the decision. The State's response—and, by extension, the state court's decision—refers *only* to Florida law. Because the response does not refer at all to federal law, it is already "clear from the opinion itself that the state court relied upon" state grounds and not federal grounds when it denied relief. *Long*, 463 U.S. at 1042.

## IV. CONCLUSION

We **AFFIRM** the denial of Carey's petition.