[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10329

_____

ELLIS LOUIS MASHBURN, JR.,

Petitioner-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:14-cv-01829-LSC

_____

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

WILSON, Circuit Judge:

Ellis Mashburn, Jr. appeals the district court's denial of his petition for habeas corpus. After reviewing this case's extensive record, and with the benefit of oral argument, we affirm.

## I.      Background

### A.  Facts

As with all convictions that result in the ultimate punishment, the facts underlying this case are heart-wrenching from any perspective. In 2006, Mashburn pleaded guilty to, and was subsequently found guilty of, murdering his grandmother and stepgrandfather.[1] Like the Alabama Court of Criminal Appeals (ACCA), *Mashburn v. State*, 148 So. 3d 1094, 1103–04 (Ala. Crim. App. 2013) (*Mashburn I*), and the federal district court after it, *Mashburn v. Dunn*, No. 1:14-cv-01829, 2021 WL 1208868, at *1–2 (N.D. Ala. Mar. 31, 2021) (*Mashburn II*), we recite the facts as they were

---

[1] Alabama law dictates that when a defendant pleads guilty to a capital offense and the State seeks the death penalty, the defendant's plea is only evidence of guilt. *See* Ala. Code § 13A-5-42 ("A defendant who is indicted for a capital offense may plead guilty to it, but the state, only in cases where the death penalty is to be imposed, must prove the defendant's guilt of the capital offense beyond a reasonable doubt to a jury. The guilty plea may be considered in determining whether the state has met that burden of proof.").

stated in the Alabama trial court's amended sentencing memorandum.[2]

> 1. [Mashburn], while accompanied by at least one other individual, went to the home of Henry Owen Birmingham, Jr., and Clara Eva Birmingham in the late afternoon or early evening hours of October 29, 200[2]. The apparent reason for the visit was for the purpose of the theft of property and perhaps for the purpose of confronting Henry Owen Birmingham, Jr. In any event, the Birmingham home was invaded either by force or by the application of force to an occupant after entry by [Mashburn] as proven by trace evidence recovered. By testimony presented by a witness to whom [Mashburn] had said to have confessed, he and his accomplice, Tony Brooks, were armed with at least a knife and a hatchet.

> 2. The fact that certain items of personal property, namely jewelry, of Clara Eva Birmingham were recovered from or were traceable to [Mashburn] after the home invasion, the reasonable inference is that [Mashburn] went to the Birmingham residence for the purpose of obtaining money or things of value.

---

[2] The ACCA determined that the first sentencing memorandum was not in compliance with Alabama Code § 13A-5-47 (requiring trial courts to "enter specific written findings concerning the existence or nonexistence" of aggravating and mitigating circumstances). The ACCA remanded the case back to the trial court for more detailed, written fact-finding.

3. The bodies of Henry Owen Birmingham, Jr., and Clara Eva Birmingham were transported to the Cooper Green Hospital forensic autopsy facility where they were each subjected to a post-mortem examination by Dr. Joseph Embry, State Medical Examiner. The results of the autopsies were that each victim died from multiple stab and sharp instrument wounds and blunt-force trauma to the head. Crime scene photographs, autopsy photographs and the testimony of Dr. Embry showed that each victim suffered repeated wounds from a knife or knife-like instrument, that the wounds were vicious and delivered in such a way as to indicate an attack whereby each defended themselves and were obviously aware of the extent and nature of the attack and their impending deaths. The crime scene, too, indicated that both victims resisted attack and bore witness to the violence associated with their deaths.

4. Whether either victim was able to appreciate the plight and suffering of the other or not, the crime scene and the autopsy findings clearly indicate each would have been aware of the soon-to-be-fatal assault being committed upon them individually.

5. Other than [Mashburn's] plea of guilty, the most compelling evidence was the DNA analysis and comparison of crime scene blood with that of [Mashburn] and the testimony of a former cellmate of [Mashburn], Michael Wayne Simpson. Four blood traces recovered from the scene, three in the master bedroom and one from the wall in the den, matched that of the

Defendant, Ellis Mashburn, with a computed popula-
tion frequency of 1:1.2 quintillion non-related white
individuals and 1:1.3 quintillion non-related black in-
dividuals.  To strengthen the connection of the trace
evidence recovered, [Mashburn] was observed to have
a fresh laceration on his left hand that he stated he
had himself sewed up after "cutting it on a fence" at
his residence.  Additionally, Michael Wayne Simpson
testified that [Mashburn] had confessed to him about
the killing of his grandmother and step-grandfather
while accompanied by Tony Brooks.  His testimony
relating what he stated was told to him was con-
firmed by various aspects of the crime scene.

### B.  Procedural History

Mashburn was convicted on five counts of capital murder,
including murdering Mr. and Mrs. Birmingham in the course of a
robbery, Ala. Code § 13A-5-40(a)(2) (Counts 1–2); murdering Mr.
and Mrs. Birmingham in the course of a burglary, Ala. Code § 13A-
5-40(a)(4) (Counts 3–4); and murdering two people by one act or
pursuant to a single scheme or course of conduct, Ala. Code § 13A-
5-40(a)(10) (Count 5).  *Mashburn I*, 148 So. 3d at 1102.  A penalty-
phase jury unanimously concluded in a special verdict that Mash-
burn's crimes "were especially heinous, atrocious or cruel when
compared to other capital offenses" and voted eleven-to-one to rec-
ommend a sentence of death—a recommendation that the trial
court adopted.  *Mashburn II*, 2021 WL 1208868, at *3.

In its amended sentencing memorandum, the trial court
identified ten mitigating circumstances that were proven during

the proceedings: 1) acceptance of legal responsibility; 2) no significant criminal history; 3) Mashburn's young age (24) at the time of the offenses; 4) "a stormy and dysfunctional family life" and a "more probable than not" chance that Mashburn was "the victim of psychological and physical abuse and was not properly protected by his mother from those intra-family problems"; 5) untreated attention deficit disorder or attention deficit hyperactivity disorder that resulted in significant educational and behavioral issues; 6) a familial predisposition to mental, social, and substance-abuse issues and substance abuse early in life and at or near the time of the crime; 7) family reports of a difficult birth that resulted in anoxia at the time of delivery (though this circumstance was largely impeached by Alabama "but [was] given appropriate consideration by the Court"); 8) mental health issues (like hearing voices) that went unaddressed; 9) Mashburn was loved by his family; and 10) "[t]hat life without possibility of parole means life without possibility of parole." The trial court also noted that the jury's verdict—eleven-to-one in favor of death—was not unanimous and that "[m]ental health experts opined that [Mashburn] had a decreased intellectual function likely caused by poly-substance abuse and alleged physical trauma," although the court found that the "trauma was not objectively demonstrated."

The trial court also determined that four aggravating circumstances were proven beyond a reasonable doubt: 1) the capital offenses were committed in the course of a burglary; 2) the capital offenses were committed in the course of a robbery; 3) the capital offenses were "especially heinous, atrocious or cruel compared to

other capital offenses"; and 4) Mashburn "intentionally caused the death of two or more persons pursuant to one scheme or course of conduct."

The trial court concluded "that the evidence clearly supports the Jury's verdicts in this case and, in particular, the Jury's recommendation of a sentence of death." The trial court then stated that it "is independently of the opinion and finds that the aggravating circumstances in this case clearly outweigh the mitigating ones presented, that the earlier-imposed sentence of death in this case was and is appropriate under Alabama's guided sentencing scheme and that there has been no reason demonstrated that any other sentence would be warranted."

Mashburn's convictions and sentence were affirmed by the ACCA, and both the Supreme Court of Alabama and the Supreme Court of the United States denied certiorari. *Mashburn v. State*, 7 So. 3d 453 (Ala. Crim. App. 2007), *cert. denied* October 24, 2008; *Mashburn v. Alabama*, 556 U.S. 1270 (2009) (mem.).

After exhausting his direct appeals, Mashburn filed a petition for postconviction relief under Alabama Rule of Criminal Procedure 32.[3] *See* Am. Pet. For Relief from J. Pursuant to Rule 32.1(f)

---

[3] In both his Rule 32 petition and his subsequent federal habeas petition, Mashburn raised a number of claims, covering both the guilt and penalty phases of his trial. All of these claims were dismissed by the ACCA and the district court for various reasons. See *Mashburn I*, 148 So. 3d at 1162; *Mashburn II*, 2021 WL 1208868, at *41. The review that follows, however, is limited to the issues

of the Ala. Rules of Criminal Procedure (Rule 32 Petition), *Mashburn v. State*, 148 So. 3d 1094 (Ala. Crim. App. 2013) (No. CR-11-0321). In his petition to the state circuit court, Mashburn alleged that his penalty-phase counsel were constitutionally ineffective, in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, Mashburn first argued that his counsel were ineffective for failing to present evidence that he was under the influence of drugs (methamphetamine and prescription drugs) and was without sleep for numerous days at the time of the crimes. *See* Rule 32 Petition, ¶ 224. Mashburn claimed that counsel should have presented this information along with evidence about how drug use and sleep deprivation would have affected his mental state during the commission of the crimes. *Id.* ¶ 226. Second, Mashburn pointed out that Dr. Thomas Sachy, a clinical neuropsychiatrist, testified that Mashburn had "some form of bipolar disorder." *Id.* ¶ 255. Mashburn argued that his counsel were ineffective for not pushing further and offering medical evidence about how this disorder could have caused involuntary and combative behavior on the night of the murders. *Id.* ¶ 258.

Mashburn requested discovery, but a little over a week later, Alabama filed a motion requesting that the circuit court withhold ruling on Mashburn's request because his claims were due to be

---

delineated in the certificate of appealability. *See Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1215 (11th Cir. 2022).

dismissed. *Mashburn I*, 148 So. 3d at 1104. The circuit court agreed with Alabama and summarily dismissed Mashburn's petition. *Id.*[4]

The ACCA affirmed the dismissal. *Id.* at 1162. As we will detail more below, the ACCA determined that Mashburn failed to plead his claims with sufficient specificity to satisfy Alabama Rules of Criminal Procedure 32.3[5] and 32.6(b).[6] *Id.* at 1153, 1158–59. For both claims, the ACCA took particular issue with Mashburn's failure to 1) identify an expert or lay person who would have testified had they been solicited, and 2) describe what the testimony of those individuals would have been. *Id.* at 1158–59; *see also Windsor v. State*, 89 So. 3d 805, 813–14 (Ala. Crim. App. 2009) (concluding that summary dismissal was appropriate where the defendant did not, in part, "specifically identify any experts counsel could have called and did not set forth specifically what their testimony would have

---

[4] For reasons unknown, the parties were not notified about the summary dismissal for around a year, which under Alabama Rules, would ordinarily bar an appeal. *Mashburn II*, 2021 WL 1208868, at *4; Ala. R. Crim. P. 32.2(c). Once Mashburn was finally informed, and without opposition from Alabama, he filed a petition seeking an out-of-time appeal under Alabama Rule of Criminal Procedure 32.1(f). *Mashburn II*, 2021 WL 1208868, at *4. The ACCA granted the petition.

[5] Alabama Rule of Criminal Procedure 32.3 states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief."

[6] Alabama Rule of Criminal Procedure 32.6 states that "[e]ach claim in the petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."

been"). The Supreme Court of Alabama denied Mashburn's petition for a writ of certiorari. *Mashburn II*, 2021 WL 1208868, at \*4.

Mashburn next took his claims to federal court by filing a petition for habeas corpus under 28 U.S.C § 2254. *See id.* at \*1. The district court made rather quick work of Mashburn's claims. First, the district court found that Mashburn "alleged many claims in his habeas petition without citing case authority, discussing record evidence, or replying to Respondents' contentions about dismissal." *Id.* at \*11. Interestingly, the district court couched its decision about Mashburn's pleadings in the language of abandonment by holding that "[c]onsistent with his silence, Mashburn has *abandoned* those portions of his petition or waived the right to pursue them as habeas claims." *Id.* (emphasis added) (citing *Tharpe v. Humphrey*, No. 5:10-cv-433, 2014 WL 897412, at \*3 n.4 (M.D. Ga. Mar. 6., 2014), *aff'd sub nom. Tharpe v. Warden*, 834 F.3d 1323 (11th Cir. 2016)).

As an alternative to its abandonment holding, the district court held that Mashburn's petition was too "conclusory" to show why the ACCA's decision was "contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent" or was "based on unreasonable factual findings" as required by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). *Id.*[7] Thus, the district court dismissed Mashburn's

---

[7] *See also id.* at \*41 ("With the exception of one procedurally-defaulted ineffectiveness allegation, the substance of Mashburn's Rule 32 and § 2254 assertions are the same. Akin to the ACCA's assessment of Mashburn's exhausted Rule

claims "as abandoned or unproven on habeas review." *Id.* And, finding that Mashburn had failed to make a viable federal habeas claim, the district court also denied Mashburn's requests for an evidentiary hearing and a certificate of appealability (COA). *Id.* at *40–42.[8]

Mashburn filed a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), which the district court denied. In its order, the district court first defended its abandonment holding. Then, responding to Mashburn's request that it address his claims on the merits, the district court maintained that it had already made an "alternative merits-based holding that [Mashburn] failed to prove a right to relief under AEDPA on those allegations adjudicated in state court." The district court explained that the "thrust of this holding is that despite the attachment of AEDPA deference to those allegations which the state courts rejected substantively, Mashburn sought habeas relief without asserting anything to satisfy his stringent adjudicated burden or resist a § 2254 dismissal in reply." After further analysis, the district court again denied Mashburn's requests for an evidentiary hearing and a COA.

---

32 allegations, this Court finds that Mashburn's § 2254 allegations, even accepted as true, lack the requisite factual and legal specificity to substantiate an entitlement to habeas relief.").

[8] A COA permits a plaintiff to appeal a final order of a district court in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1). "A [COA] may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

Mashburn then filed a motion for a COA with this court, which we granted. In the COA, we identified three issues:

(1) Whether Mashburn's trial counsel provided ineffective assistance, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), in the penalty phase of his trial by failing to present evidence regarding his state of mind at the time of the crimes;

(2) Whether Mashburn's trial counsel provided ineffective assistance, pursuant to *Strickland*, 466 U.S. at 668, in the penalty phase of his trial by failing to present medical evidence regarding his bipolar disorder diagnosis; and

(3) Whether Mashburn was entitled to an evidentiary hearing in the district court.

## II.    Ineffective Assistance of Counsel: COA Issues 1 and 2

### A.    Law

"We review de novo a district court's denial of habeas relief on an ineffective-assistance-of-counsel claim, which presents a mixed question of law and fact." *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022) (en banc).[9]

---

[9] Although Mashburn has filed two (nearly identical) petitions as part of his postconviction efforts—his state Rule 32 petition and his federal § 2254 habeas petition—our review focuses on the adequacy of the former. *Frazier v. Bouchard*, 661 F.3d 519, 527–28 (11th Cir. 2011) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("We now hold that review under § 2254(d)(1) is limited to the

To establish counsel was constitutionally ineffective under *Strickland*, a petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance was prejudicial. *Strickland*, 466 U.S. at 687.

To prove deficiency, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690; *see also Perkins v. United States*, 73 F.4th 866, 879 (11th Cir. 2023) (stating a petitioner "must establish that no competent counsel would have taken the action that his counsel did take"). This is an objective assessment, and we start from a presumption that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 690.

To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here, "the question is whether there is a reasonable probability that, absent the errors, the sentencer—including [this] court, to the extent [we] independently reweigh[] the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695; *see also Gavin v. Comm'r, Ala. Dep't of Corr.*, 40 F.4th 1247, 1263 (11th Cir. 2022). So, to determine the reasonable probability of a different result, we must "consider 'the totality of the available mitigation

---

record that was before the state court that adjudicated the claim on the merits.'")).

evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding'—and 'reweigh it against the evidence in aggravation.'" *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (per curiam) (alteration adopted) (quoting *Williams v. Taylor*, 529 U.S. 362, 397–98 (2000)).  The Supreme Court defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome" of the proceeding.  *Strickland*, 466 U.S. at 694.  This "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

On its own, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  But our review here is subject to an AEDPA filter.  AEDPA only permits a federal court to grant a writ of habeas corpus with respect to a claim "adjudicated on the merits" in a state court if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).[10]

---

[10] The state court dismissed Mashburn's petition for noncompliance with Alabama Rule of Criminal Procedure 32.6(b).  We have held that "state court summary dismissals of . . . constitutional claims under Rule 32.6(b) [are] adjudications on the merits, and are therefore . . . subject to review under AEDPA." *Borden v. Allen*, 646 F.3d 785, 808 (11th Cir. 2011).

Relevant here, "[t]o meet the 'unreasonable application' standard, 'a prisoner must show far more than that the state court's decision was merely wrong or even clear error.'" *Pye*, 50 F.4th at 1034 (quoting *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam)). Instead, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quoting *Harrington*, 562 U.S. at 103).

"Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance at the sentencing phase . . . didn't prejudice him— that there was no 'substantial likelihood' of a different result—was 'so obviously wrong that its error lies beyond any possibility for fairminded disagreement.'" *Pye*, 50 F.4th at 1041–42 (quoting *Shinn*, 141 S. Ct. at 523–24). We apply this framework below.

## B. *Mashburn's Claims*

Mashburn first argues that his counsel were deficient during the penalty phase of his trial because, despite knowing Mashburn was 1) high on methamphetamine and prescription drugs and 2) without sleep for four to five days at the time of the crimes, they "failed to seek aid from a medical expert to investigate the potential effects both lack of sleep and abuse of prescription drugs would have on one's ability to control one's actions and think clearly." *See* Rule 32 Petition, ¶ 224, 226. Without citation, Mashburn opines

that "[l]ack of sleep joined with the use of prescription drugs is likely to have an effect on one's behavior and mental state." *Id.* ¶ 225. [11] Finally, Mashburn suggests that evidence of his intoxication could have been used to disprove the existence of the mental state required for the prosecution's aggravating factors of robbery and burglary, and "may have influenced the jury in their consideration of the prosecution's other aggravating factors." *Id.* ¶ 227.

Second, Mashburn claims that his penalty-phase counsel performed deficiently by failing to present evidence to support testimony about his bipolar disorder. As described earlier, Mashburn notes that a clinical neuropsychiatrist, Dr. Thomas Sachy, "testified that Mr. Mashburn has some form of bipolar disorder as well as brain damage leading to a behavior disorder." *Id.* ¶ 255. Mashburn adds the following allegations:

> [Trial counsel] did not present evidence that bolstered Dr. Sachy's diagnosis of bipolar disorder in Mr. Mashburn. They did not explain the relationship of Mr. Mashburn's psychiatric disease to his crime. Children with bipolar disorder, the disease Dr. Sachy diagnosed Mr. Mashburn as suffering from, are known to hear voices, as Mr. Mashburn has throughout his life. Children with bipolar disorder often begin abusing substances at an early age to cope with their psychiatric symptoms as Mr. Mashburn did. Bipolar disorder also

---

[11] As the ACCA noted, Mashburn did not identify the names of any medical experts who would have testified at his trial had they been contacted, nor did he supply evidence of what information experts might have provided.

> causes impulsivity and episodic extreme dyscontrol,
> which can lead to unpredictable, involuntary com-
> bative behavior.

*Id.* ¶ 258.[12]

Alluding to the amended sentencing memorandum, Mash-
burn highlights the trial court's finding that "[m]ental health ex-
perts opined that [Mashburn] had a decreased intellectual function
likely caused by poly-substance abuse and physical trauma, which
trauma was not objectively demonstrated." While the trial court
recognized that Mashburn's counsel presented evidence in support
of this mitigating factor, it did not find the factor to be proven be-
yond a reasonable doubt. Mashburn contends that more evidence
about the effects of bipolar disorder would have strengthened this
factor's influence.

### C. Discussion

We start by addressing Alabama's contention that Mashburn
waived any challenge to the district court's initial holding that he
abandoned the claims listed in the COA.[13] Alabama argues that

---

[12] Again, beyond referencing Dr. Sachy's diagnosis and making claims about
the effects of bipolar disorder, Mashburn did not provide the names of any
experts who would have testified had they been contacted by his counsel, nor
did he file additional evidence of what the expert testimony would have been.

[13] *See* Question from Judge Wilson at Oral Argument at 32:17, Mashburn v.
Alabama, (No. 22-10329) (argued July 26, 2023), https://www.ca11.uscourts.g
ov/oral-argument-recordings ("[Mashburn] abandoned the abandonment ar-
gument?").

Mashburn did not sufficiently address this issue in his opening brief, and indeed, Mashburn's entire argument on the issue is confined to a single footnote. In that footnote, Mashburn contends that because the district court ultimately addressed the merits of his claims in response to his motion to alter or amend judgment under Rule 59(e), the abandonment issue is moot. As Alabama rightly points out, this court has held that "[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Passing references without argumentation or citation to authority are insufficient. *Id.* at 681. However, because 1) "our abandonment rule is prudential, not jurisdictional," *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc); 2) the district court's classification of pleadings in an initial habeas petition as "abandoned" is an oddity, *see McFarland v. Scott*, 512 U.S. 849, 856 (1994) (explaining that "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears *legally insufficient* on its face" (emphasis added)); and 3) "we may affirm on any ground supported by the record," *Carey v. Dep't of Corr.*, 57 F.4th 985, 989 (11th Cir. 2023), we decline to resolve the case on this basis.

Instead, we conclude the ACCA's determination that Mashburn's Rule 32 petition failed to sufficiently plead facts that *establish prejudice* was not "contrary to," or "an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). Because the facts pleaded in the Rule 32 petition are insufficient to establish

prejudice under the *Strickland*-AEDPA framework, we affirm the denial of habeas relief. *See Carey*, 57 F.4th at 989 ("Because a petitioner must prove both deficient performance and prejudice, a court need not address one element if it determines that the petitioner has failed to prove the other.").

"In deciding whether this ruling by the state court denying post-conviction relief ultimately was reasonable, we conduct the prejudice inquiry by evaluating the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweighing it against the evidence in aggravation." *Frazier*, 661 F.3d at 532 (alterations adopted) (quoting *Hall v. Head*, 310 F.3d 683, 701 (11th Cir. 2002)). Even accepting the allegations in Mashburn's habeas petition as true, this analysis leads us to the conclusion that neither his claim regarding his mental state at the time of the crime nor his claim regarding his bipolar disorder—whether considered separately or together—is sufficient to overcome AEDPA deference and establish prejudice. That is, we find that "there is [not] a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.[14]

---

[14] In Alabama, at least ten members of the jury must agree to sentence a defendant to death. Ala. Code § 13A-5-46(f). Mashburn was sentenced to death by a vote of eleven to one. So, prejudice here requires "a reasonable

Looking first at the mitigating circumstances, Mashburn claims that his trial counsel "lacked the requisite familiarity with the case to present a coherent theory of mitigation and deprived the judge and jury of critical mitigating evidence[.]" Pet'r Br. 21. Mashburn cites to cases in which we held that counsel's failure to present mitigating evidence was sufficiently prejudicial to warrant habeas relief. We find those cases distinguishable from this one. In those cases, we reached our conclusion because counsel either failed to present *any* important mitigating evidence at trial or presented only a sliver of significant evidence. *See DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1276 (11th Cir. 2014) (emphasizing that "the sentencing jury heard nothing of the daily beatings that DeBruce suffered as a child at the hands of his older sister, his resistance to joining gangs despite their assaults and intimidation, the pervasive violence in his neighborhood that caused him to witness the stabbing of a neighbor and his brother being shot, his one or more suicide attempts, DeBruce's efforts to nurse his sister while she recovered from an incapacitating stroke, DeBruce's alcoholic and disengaged father, or his struggles in school and his low-average intelligence"); *Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328, 1355 (11th Cir. 2011) (lamenting that "[w]hile the jury heard a small sliver of his volatile upbringing, the jury heard nothing of Cooper's life of horrific abuse rendered by both his father and brother, his

probability" that at least two other jurors "would have struck a different balance" regarding Mashburn's "moral culpability." *Andrus v. Texas*, 140 S. Ct. 1875, 1886 (2020) (per curiam).

use of drugs and alcohol beginning at age 11 to escape his family and the abuse, his abandonment by his mother for short stretches of time, his seventh-grade education and learning deficits, and his depression"); *Ferrell v. Hall*, 640 F.3d 1199, 1234–35 (11th Cir. 2011) (explaining that new evidence would have revealed that the petitioner suffered "from organic brain damage, bipolar disorder, an epileptic or seizure disorder, and borderline mental retardation"; endured regular abuse from his parents, including beatings with razor strops and belts; grew up in poverty due to his father's gambling addiction; and lived with a mother who "suffered from clinical depression, suicidal ideations, rage blackouts, and urges to physically hurt her children"—all of which would lead to "increased impulsivity," "decreased sound judgment," and conduct that is "not entirely volitional"); *Brownlee v. Haley*, 306 F.3d 1043, 1067 (11th Cir. 2002) (holding that the petitioner was entitled to habeas corpus relief because of "counsel's failure to investigate, obtain, or present *any* evidence of mitigating circumstances to the sentencing jury").

Here, the state trial court acknowledged that Mashburn's counsel presented evidence for twelve mitigating factors and that ten mitigating factors were proven. Unlike the cases referenced above, Mashburn's argument is not that he was prejudiced by his counsel's failure to produce *any* evidence, but that he was prejudiced by his counsel's failure to produce *even more* evidence. However, counsel is not "required to present all mitigation evidence." *Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000) (en banc).

And, in our view, the ACCA did not unreasonably err in concluding that Mashburn did not allege sufficient facts to demonstrate that it is reasonably probable—or substantially likely, *Pinholster*, 563 U.S. at 189—that the information he believes should have been introduced would have tipped the aggravation-mitigation scale in his favor.  For example, regarding Mashburn's claim that counsel should have marshaled evidence about his state of mind at the time of the crimes, "we have repeatedly stressed that evidence of intoxication or alcoholism is a double-edged sword that itself could harm a petitioner's case."  *Brooks v. Comm'r, Ala Dep't of Corr.*, 719 F.3d 1292, 1304 (11th Cir. 2013).

And, considering Mashburn's claim that counsel should have presented more expert testimony of the potential deleterious effects of bipolar disorder, such as the link between bipolar disorder and childhood substance abuse,[15] the record reflects that the jury did hear evidence that Mashburn started huffing paint and gasoline at eleven years old to deal with the voices he heard, and by thirteen he started drinking wine and taking his parents' prescription pain medication to subdue his psychiatric ailments.  The trial judge

---

[15] We note once more that the jury in fact heard Dr. Sachy testify that he believed Mashburn had "some form of bipolar disorder."  Rule 32 Petition, ¶ 255. Mashburn argues that the jury should have heard *more* testimony about how "[c]hildren with bipolar disorder often begin abusing substances at an early age to cope with their psychiatric symptoms as Mr. Mashburn did" and how bipolar disorder "also causes impulsivity and episodic extreme dyscontrol, which can lead to unpredictable, involuntary combative behavior."  Rule 32 Petition, ¶ 258.

credited this testimony and noted that Mashburn's history of substance abuse and mental health issues were mitigating factors. We cannot say that every fair-minded jurist would believe that more details about the effects of bipolar disorder on Mashburn's life, including during his childhood, would create a substantial likelihood of a different sentence. *Cf. Ferrell*, 640 F.3d at 1234–35 (concluding that a different result was reasonably probable when there was new evidence of bipolar disorder—the diagnosis itself, rather than testimony about its effects—*along with* new evidence about organic brain damage, epileptic or seizure disorder, borderline intellectual disability, violent child abuse, poverty, and the cumulative effects of those factors).[16]

Our conclusion is bolstered by the strength of the aggravating circumstances identified by the trial court. When there is "substantial evidence of aggravating circumstances" it can be "more

---

[16] As Mashburn points out, in *Orme v. State*, the Supreme Court of Florida held that the balance of mitigating and aggravating factors may have been altered if counsel had presented evidence about the petitioner's bipolar disorder, which would have bolstered his intoxication defense. 896 So. 2d 725, 732, 736 (Fla. 2005) (per curiam). However, apart from arising outside of Alabama, at least two points distinguish *Orme* from Mashburn's case. First, in *Orme*, it appears counsel did not present *any* evidence about the petitioner's bipolar diagnosis. *Id.* at 733. Here, the jury heard Dr. Sachy's testimony that Mashburn had "some form of bipolar disorder," Rule 32 Petition, ¶ 255—they just did not learn more information about the disorder's symptoms. Second—and perhaps more importantly—*Orme* was decided by the Supreme Court of Florida, which did not owe AEDPA deference to another court. Here, on the other hand, we are duty-bound to respect the decision of the ACCA unless it was objectively unreasonable. *See* 28 U.S.C. § 2254(d).

difficult to establish prejudice under *Strickland.*" *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1269 (11th Cir. 2012); *see also Sochor v. Sec'y Dep't of Corr.*, 685 F.3d 1016, 1030 (11th Cir. 2012). Here, the trial court concluded that Alabama proved four aggravating circumstances beyond a reasonable doubt. One of which—that the offenses were "especially heinous, atrocious or cruel compared to other capital offenses"—was unanimously agreed upon by a jury after hearing ample evidence about the gruesome deaths of two elderly victims.

In sum, Mashburn's counsel presented enough evidence for the trial court to determine that twelve mitigating circumstances had been invoked and ten had been proven. Despite this, an Alabama jury concluded in an eleven-to-one vote that the aggravating factors outweighed their mitigating counterparts such that Mashburn's sentence was appropriate. While Mashburn argues that more evidence about his bipolar diagnosis and state of mind should have been presented, this additional evidence—even if true—is of debatable strength and would only constitute a fraction of the total mitigating evidence that the jury would have considered. Thus, tethered to the highly deferential standards of review imposed by AEDPA and *Strickland*, we cannot say the ACCA unreasonably erred in determining that Mashburn failed to sufficiently plead facts that would establish prejudice under *Strickland*. Because the ACCA's conclusion was not "contrary to," or "an unreasonable application of, clearly established Federal law" we cannot grant Mashburn the habeas relief that he seeks.

### III.    Evidentiary Hearing

Because we conclude that the claims in Mashburn's Rule 32 petition, even if true, are insufficient to overcome AEDPA deference and establish prejudice under *Strickland*, the district court did not abuse its discretion by foregoing an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 477 (2007) (noting that we review a district court's decision deny a habeas petitioner's request for an evidentiary hearing for an abuse of discretion); *see also id*. at 474 ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."); *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1163 (11th Cir. 2020) (similar).

## IV.    Conclusion

For the reasons above, we affirm the district court's denial of Mashburn's habeas claims.

**AFFIRMED.**